IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY ALLEGRINO, as | ) | |
| assignee of Liberty Immobiliare, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-1507 |
| | ) | Judge Nora Barry Fischer |
| CONWAY E & S, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

This action involves various claims brought by *pro se* Plaintiff, Anthony J. Allegrino, II ("Plaintiff"),[1] he avers were assigned to him by Liberty Immobiliare, Inc. ("Liberty"),[2] based on alleged real and personal business property damage and causes of action seeking to collect insurance proceeds under property insurance policies issued to Liberty by Defendants Certain Underwriters at Lloyd's, Advent Underwriting Limited, a/k/a Lloyd's Syndicate 780, and Omega Underwriting Agents Ltd., a/k/a Lloyd's Syndicate 958 ("Underwriters"). (Docket No. 3).[3] The subject insurance

---

[1]

Plaintiff had been admitted to the practice of law in the state of California on June 1, 1999; however, on November 9, 2007, the California Supreme Court disbarred Plaintiff from the practice of law. *In the Matter of Allegrino*, Case No. 04-O-12846 (Ca. 2007); available at: http://members.calbar.ca.gov/search/member_detail.aspx?x=200905 (last visited March 29, 2010); *appeal denied*, *Allegrino on Discipline*, 2007 Cal. LEXIS 11089 (Ca. 2007), *cert. denied*, *Allegrino v. State Bar*, 128 S.Ct. 2090 (2008). Prior to his disbarment, Allegrino was disciplined in California in 2005. *Id.*

[2]

Liberty, a closed corporation, was formed on December 14, 2006 under the laws of Delaware, and maintains its principal place of business in New Windsor, New York. (Docket No. 3 at 8); *see also* http://corp.delaware.gov/default.shtml (last visited April 19, 2010).

[3]

*See* discussion regarding these Defendants *infra*, on pages 3-4, and in note 13.

policies provide coverage subject to certain terms and conditions for investment and/or rental property located in Duquesne, Pennsylvania (and other venues) owned by Liberty, as well as business personal property. (Docket No. 3 at 4; Docket No. 83). Plaintiff has asserted eleven (11) "claims,"[4] initially naming eleven (11) different Defendants.[5] (*Id.*).  This matter comes before the Court on Defendant, Champion Claim Service, Inc.'s ("Champion") Motion to Dismiss Plaintiff's Amended Complaint, and/or for Summary Judgment. (Docket No. 33). As discussed *infra*, Champion's motion will be addressed as a motion to dismiss under Rule 12(b)6.  For the following reasons, the motion is granted.

## II.    Factual Background

Since this matter comes before the Court on a motion to dismiss, the factual allegations contained in Plaintiff's Amended Complaint are assumed as true.  *Hemi Group, LLC v. City of New York*, -- U.S. --, 130 S.Ct. 983, 986-87 (Jan. 25, 2010)(citing *Leatherman v. Tarrant County Narcotics and Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).  The pertinent facts are as follows.

### A.    The Parties Relevant to the Instant Motion

Plaintiff is a domiciliary of California, and a current resident of New York. (Docket No. 3 at 3).  Liberty is a Delaware corporation with its principal place of business in New York. (*Id*).

---

[4]       Plaintiff uses the term "claim," rather than "count," to identify his eleven causes of action. (Docket No. 3). In addressing the same, when referencing Plaintiff's Amended Complaint, the Court will use the term "claim."

[5]       In his original Complaint, Plaintiff named Raphael & Associates as a Defendant. (Docket No. 1). However, he did not name this party as a Defendant in his Amended Complaint (Docket No. 3); therefore, this party was terminated from the docket on November 24, 2009. (*See also* note 16, *infra*, and page 14). On April 23, 2010, Plaintiff and Defendant Steel Valley Council of Government filed a stipulation for dismissal of Plaintiff's claims against this Defendant. (Docket No. 153). Consequently, this Defendant was dismissed, with prejudice. (Docket No. 154).

Plaintiff is the primary stockholder and president of Liberty, the owner of the subject rental investment property, a multi-unit apartment building, at 138 Aurilles Street in Duquesne, Pennsylvania, which is the focus of Plaintiff's claims. (*Id.* at 4-5; *see also* Docket No. 33-2 at 1-2). Champion is a Pennsylvania independent adjuster that was engaged by Raphael & Associates, a third party claims administrator, to handle Liberty's claims against Underwriters. (Docket No. 3 at 3-4; Docket No. 33 at 2).

### B.     The Insurance Policies

Liberty is the policyholder of two insurance policies that provided coverage for commercial, building and personal property, issued by Underwriters, for the property at 138 Aurilles Street in Duquesne, Pennsylvania: (1) policy number CONW-51534-07, which provided insurance from May 9, 2007 to May 9, 2008; and (2) policy number CONW-51636-08, which provided insurance from May 9, 2008 to May 9, 2009. (Docket No. 3 at 4-5; Docket No. 144). Plaintiff avers that the policy documents listed "Certain Underwriters at Lloyds [sic]" and "Lloyds [sic] of London" as the insurer.[6] (*Id.* at 4). Yet, on November 6, 2009, Defendant Conway E & S, Inc. allegedly identified two other parties to the insurance agreements: Defendants, Omega Underwriting Agents, Ltd., syndicate 958, and Advent Underwriting Limited, syndicate 780. (*Id.*). Prior to that date, Plaintiff understood that according to the language of the policies and the representations of the agent who sold them to Liberty, i.e. Defendant Associates of Risk Transfer, Inc., doing business as RTI Insurance Services

---

[6]

Lloyd's of London identifies itself as the world's leading insurance market providing specialist insurance services to businesses in over 200 countries and territories. *See* http://www.lloyds.com/About_Us/ (last visited April 21, 2010). In 2009, 84 syndicates were underwriting insurance at Lloyd's. *Id.* A syndicate is a member or group of members underwriting insurance business at Lloyd's through the agency of a managing agent or a substitute agent to which a syndicate number is assigned by the Council at Lloyd's. *Id.*

3

("RTI"), Defendants Society of Lloyd's and Lloyd's TSP Group were the insurer.[7] (*Id.* at 5). On November 10, 2009, Plaintiff took by assignment from Liberty any and all outstanding and unresolved claims made on the policies.[8] (Docket No. 3 at 5). These policy claims included those related to damage to both the real business property on Aurilles Street as well to Plaintiff's business personal property that was located within the building. (*Id.*).

Only the language of the insurance policies relevant to this Court's instant rulings, and the reader's understanding of the same, are provided herein.[9] Per the declarations page (Docket No. 144 at 3), the name of the insured is listed as Liberty Immobiliare, Inc., located at 606 Union Avenue, New Windsor, New York (Docket No. 144 at 3). The insured premises include, *inter alia*, 138 Aurilles Street in Duquesne, Pennsylvania. (*Id.*). The declaration page also states that the insurance is 100 % effective with Certain Underwriters at Lloyd's, while Charles T. Conway, President of Conway E & S, Inc., has signed the policy as the correspondent. (*Id.* at 3-4).

## C.     Claims Against the Policies

---

[7]

Defendants Society of Lloyd's and Lloyd's TSP Group have argued that they are separate and distinct legal entities from the Underwriters at Lloyd's, and not the insurer. (Docket Nos. 108, 125). The Court will address this issue in relation to their Motions to Dismiss (*id.*) in a separate memorandum opinion.

[8]

In contract law, an assignment is a transfer of one party's right to performance under a contract to a third person. *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 602 (1981). Absent an assignment from the policyholder, a third-party plaintiff has no right against the insurer. *Johnson v. Beane*, 616 A.2d 648 (Pa. Super. Ct. 1992), *aff'd*, 664 A.2d 96, 98-99, n.2-3 (Pa. 1995). Here, there has been no challenge to Plaintiff's assertion that he is the assignee of Liberty.

[9]

The terms of the two policies, aside from providing for different coverage dates and insured premises, appear to be identical. (Docket No. 144 at 3-61). As discussed *infra* in Section III, neither Plaintiff nor any of the Defendants filed complete policies as part of their pleadings or motions. The Court ordered Plaintiff to file same on April 7, 2010. (Docket No. 143); Plaintiff filed the two policies on April 13, 2010. (Docket No. 144). Thereafter, Defendants Conway E & S, Inc., and Associates of Risk Transfer, Inc., doing business as RTI Insurance Services, filed a motion to have the policies made part of the record, which the Court granted on April 22, 2010. (Docket No. 148, 150).

1.      Vandalism

Plaintiff asserts that he incurred multiple losses caused by vandalism to the real property at 138 Aurilles Street, which are covered under the policies. (*Id.* at 5). The first instance of vandalism occurred between November 7, 2007 and April 10, 2008. (*Id.* at 5). The second instance occurred between May 23, 2008 and August 18, 2008. (*Id.* at 6). The subject property was also allegedly flooded by a former worker. (*Id.*). Specifically, the flood was caused by a toilet which was intentionally smashed in an upstairs apartment, after the contractor was fired by Plaintiff over a financial dispute and work issue between the parties in November 2007. (Docket No. 3 at 6). Plaintiff alleges he promptly reported the vandalism claims. (*Id.*).

On September 4, 2008, Plaintiff submitted to Defendants an estimate of itemized damages related to the two instances of vandalism (*Id.*). He provided a second estimate on September 5, 2008. (*Id.*). Plaintiff thereafter filed a police report with Defendant City of Duquesne on October 25, 2008, providing the identity of Ernesto Avilles Sanchez as the individual who vandalized the property. (*Id.* at 6). On November 10, 2008, Plaintiff contends that provided Defendants with additional itemized damage estimates. (*Id.* at 7).

2.      Windstorm

Plaintiff also alleges that he incurred losses related to damage to the Aurilles Street property caused by two windstorms on July 20 and 22, 2008. (Docket No. 3 at 7). All of the gutters on the apartment building were "blown off" in addition to other structural and non-structural damage. (*Id.*). Plaintiff filed claims against the policies related to the described windstorms with "Defendants" on

August 18, 2008.[10]  (*Id.* at 5).

On September 4 and 5, 2008, Plaintiff also provided Defendants with estimates of itemized damages to the real and business property. (*Id.* at 6-7). Later, on November 6, 2008, he provided an engineering report related to the same, with verification of the storms and related wind speeds. (*Id.* at 6-7).

In addition, Plaintiff asserts that certain unidentified Defendants intentionally sent a "roofer" instead of a licensed engineer to examine the building for structural damage without notice to Plaintiff and that this "roofer" examined every side of the building, except the side where the damage had occurred. (Docket No. 3 at 8).  Yet, Plaintiff contends that no investigation has been conducted by Defendants to determine any cause of loss to the property. (*Id.*).  As of the date Plaintiff initiated this action, i.e. November 10, 2009, Defendants had not "adjudicated"[11] these insurance policy claims. (*Id.*).

3.    Electronic Business Property

Plaintiff also alleges that certain of his electronic business personal property was damaged by vandalism. (Docket No. 3 at 8). On October 12, 2009, this damaged personal property was moved from 138 Aurilles Street to 359 Broadway in Newburgh, New York, to be stored. (*Id.*).  The property was subsequently discarded by a worker at the new location.  (*Id.*).  Plaintiff further alleges that the damaged business property had been "previously inspected by Defendants" and was covered under

---

[10]

Throughout his eleven claims, Plaintiff generally refer to "Defendants," and does not specify a identify a specific Defendant. Thus, to the extent that each of his claims are directed at Champion, it has moved for dismissal of the same.

[11]

To the extent that Plaintiff characterizes Defendants' handling of his claims as being "adjudicated," the Court construes these references has intending to mean "adjusted."

the policies  (*Id.*).  Hence, Plaintiff filed a report with Defendants regarding the inadvertent disposal

of the damaged business property on November 10, 2009.  (*Id.*).

        4.        Demolition Damage

On or about October 2008, the property adjacent to 138 Aurilles Street, at building number

140, was demolished with the use of heavy machinery and vehicles. (Docket No. 3 at 9). Plaintiff

avers that this demolition seriously damaged the foundation, floors, and walls of Plaintiff's building.

(*Id.*)  To this end, Plaintiff attests that Defendants used heavy equipment to destroy the basement and

foundation on the neighboring property, thereby removing lateral support to Plaintiff's building.

(*Id.*).  Consequently, Plaintiff alleges that Defendants were negligent. (*Id.*).

On December 8, 2008, Plaintiff filed a claim against the subject policies for damage caused

by the demolition, along with an engineering report. (*Id.*).  A "Statutory Notice of Claim" was sent

to "other Defendants" on or about March 4, 2009.  (*Id.*). As of November 23, 2009, Plaintiff avers

that Defendants, as a whole, have not "adjudicated" this claim. (*Id.*).

        5.        Defendants' Response to Claims

Relevant to the instant motion, Plaintiff asserts that on December 18, 2008, Champion sent

him an acknowledgment letter.[12] (Docket No. 3 at 9). However, since that date, Plaintiff maintains

he has not received anything further from Champion regarding his claims. (*Id.*). On May 7, 2009,

Plaintiff asserts that "Defendants at Llloyds [sic] in London,"i.e. Omega Underwriting Agents, Ltd.,

Advent Underwriting Agents Limited, Society of Lloyd's, and Lloyd's TSP Group conducted an

examination of Plaintiff under oath. (Docket No. 3 at 10). Since that date, however, Plaintiff states

---

12

    Champion attached to its motion the recorded statement of Plaintiff dated August 27, 2008, taken by telephone
by Harold Kern, as well as the August 28, 2008 acknowledgment letter (Docket Nos. 33-1 and 33-2).

that he has not received any correspondence from these Defendants nor any updates or request for information with respect to Plaintiff's policy claims. (*Id.*).

### D.     Plaintiff's Causes of Action

In "Claims" numbered 1 through 6, Plaintiff sets forth causes of action for breach of contract against Defendants Advent Underwriting Limited, Omega Underwriting Agents Ltd.,[13]  Conway E & S, Inc. Society of Lloyd's,[14] and Lloyd's Banking Group,[15] related to their alleged failure to pay Plaintiff's claims under the subject insurance agreements for various damages in a timely manner or "at all without reasonable explanation for their conduct."[16] (Docket No. 3 at 13-21).

Plaintiff's "Claim # 7," based on negligence, names Defendants RTI and Raphael &

---

[13]

Plaintiff has identified Certain Underwriters at Lloyd's as consisting of Advent Underwriting Limited ("Advent") and Omega Underwriting Agents, Ltd ("Omega"). (Docket No. 3 at 13). He claims that all of these entities issued the subject policies. (*Id.*). Advent is a syndicate of Lloyd's at number 780, registered in London. *See* http://marketdirectories.lloyds.com/BuildPages.aspx?Page=4&Agent=47 (last visited April 21, 2010). Omega  is another syndicate of Lloyd's at number 958 and was established in 1979. *See*  http://www.omegauw.com/overview/OUA.aspx (last visited April 21, 2010).

[14]

Defendant Society of Lloyd's has identified itself as the Society and Corporation of Lloyd's and the landlord for, and provides other services to, the underwriters at Lloyd's. (Docket No. 108). The Society and Corporation of Lloyds has moved for dismissal of Plaintiff's claims against it, arguing that it is a separate and distinct legal entity from the underwriters at Lloyd's, and is not an agent for the underwriters.  (Docket No. 108-1 at 1-2).

[15]

Defendant Lloyd's Banking Group, formerly known as Lloyds TSB Group plc, has similarly moved for dismissal on the basis that it is the ultimate parent company of a banking and financial services group, incorporated under the laws of Scotland, and was not a party to the subject policies. (Docket Nos. 125, 126). It has further stated in its motion  that  it  is  not  affiliated  with  the  Lloyd's  insurance  market.    (Docket  No.  126  at  1);  *see also* http://www.lloydsbankinggroup.com/ (last visited April 21, 2010).

[16]

In particular, the damage amounts Plaintiff alleges for each cause of action, the occurrence causing said damage, and the related policy limit are as follows: (1) $70,310.33 in real property damage, $80,607.59 in property and additional damages, and $80,000 for the first vandalism; (2) $131,186.40 real property damage, and $160,000 for the second vandalism; (3) $131,186.40 in personal property damage, and $160,000 for the second vandalism; (4)  $70,310.33 for real property damage, and $160,000 for the first windstorm; (5) $70,310.33 for real property damage, and $160,000 for the second windstorm; and (6) no specific damage amount is averred with regards to the damage caused by the demolition, for which Plaintiff maintains there is a $160,000 policy limit. (*Id.*).

Associates.[17] (Docket No. 3 at 21). Plaintiff avers that these Defendants owed him a duty of care in arranging for and recommending appropriate insurance to protect his business interests and in processing his policy claims. (*Id.*). Plaintiff maintains that unspecified "Defendants" did not issue appropriate coverage and did not provide policy materials in a complete and timely fashion. (*Id.*). He further avers that these parties failed to exercise the requisite amount of care a reasonable person would exercise and that he "was damaged as a result of Defendants [sic] collective reckless and careless conduct." (*Id.*).

In "Claim # 8," Plaintiff names Defendants City of Duquesne, Twin Rivers Council of Government, Steel Valley Council of Government, and W & J Contractors, Inc. (Docket No. 3 at 21-22). He alleges that these parties owed him a duty of care in demolishing the building at 140 Aurilles Street, adjacent to his property, and in settling any loss connected with that demolition. (*Id.* at 22). He specifically asserts that the City of Duquesne supervised and observed the demolition. (*Id.*). He then avers that these Defendants did not exercise the requisite amount of care a reasonable person would exercise in demolishing a neighboring structure. (*Id.*). As noted above, Plaintiff contends that he provided Defendants with a "Notice of Claim" on March 4, 2009 "in accordance with Pennsylvania law ... within the applicable time period." (*Id.*).

Plaintiff also sets forth a claim under Pennsylvania's Unfair Trade Practices and Consumer

---

17

RTI is a group of affiliated companies specializing in risk management, insurance brokerage, and financial services. (Docket No. 3 at 3); *see* http://www.rti-insurance.com/ (last visited April 21, 2010). It is comprised of RTI Insurance Services of Pennsylvania, RTI Insurance Services of Florida, and Three Rivers Financial Services. *Id.* Raphael & Associates, no longer parties to this action, is a third party administrator and claims adjusting company with its corporate headquarters in New Jersey. *See* http://www.raphaelandassociates.com/contact.html (last visited April 21, 2010).

Protection Law, which he cites as 73 PS. § 201[18] ("UTPCPL"), in "Statutory Claim # 9." (Docket No. 3 at 22). He states that unspecified Defendants violated this law in that they "engaged in deceptive acts against [him] in adjudicating [his] [c]laims" and that he has been damaged as a result. (*Id.* at 22-23). In "Statutory Claim # 10," Plaintiff pleads a cause of action under 42 Pa. C.S. § 8371 for bad faith. (*Id.* at 23). He asserts that Defendants have not adjudicated his claims in good faith, that they "acted maliciously and with 'bad faith,'" and that they do not have any reasonable basis for denying or delaying payment on his claims. (*Id.*). Plaintiff maintains that Defendants breached their fiduciary duty of good faith and fair dealing "and there is clear and convincing evidence of that fact in violation of Pennsylvania law." (*Id.* at 24).

In "Claim # 11," Plaintiff avers that Defendants breached their duties to enter into an insurance contract with Plaintiff in good faith, in violation of New York law. (*Id.* at 25). As a result, he claims that he has suffered both "damages and consequential damages," and that Defendants are liable for an unlimited amount above the policy limit(s) for any consequential damages caused by their bad faith. (*Id.* at 25-26).

For these claims, Plaintiff seeks a "declaration"[19] that he is entitled to benefits for damages under the involved insurance policies and that Defendants collectively acted in bad faith in violation of Pennsylvania and New York laws. (Docket No. 3 at 26).  He also seeks a declaration that Defendants acted recklessly and outside the appropriate standard of care in arranging for,

---

[18]

This statute cited by Plaintiff has been deemed unconstitutional.  *See* 73 P.S. § 201. For purposes of the analyzing Champion's motion, the Court will assume that Plaintiff intended to refer to the current UTPCPL at 73 P.S. §§ 201-1, *et seq.* (2009).

[19]

Although Plaintiff indicates in the "Introduction" of his Amended Complaint (Docket No. 3 at 2) that he is seeking declaratory judgment, in all of Plaintiff's eleven claims, he requests only monetary relief. (*Id.*).

10

recommending, and providing insurance coverage, as well as in processing Plaintiff's related claims. (*Id.*). As to the demolition allegations, Plaintiff seeks a declaration that Defendants acted recklessly and without care in demolishing the building at 140 Aurilles Street. (*Id.* at 27). Plaintiff requests damages in the form of insurance benefits in the amount of $282,104.42, consequential damages in the amount of $15,000,000, punitive damages in the amount of $150,000,000, damages under the UTPCPL, and attorney's fees and costs.[20] (*Id.*).

## III.   Procedural History

Plaintiff initiated this matter on November 10, 2009 with the filing of his original Complaint, naming the following Defendants: Associates of Risk Transfer, Inc.; Raphael & Associates; Champion Claim Service, Inc.; W&J Contractors, Inc.; Steel Valley Council of Government; City of Duquesne; Twin Rivers Council of Government; Conway E & S, Inc.; Advent Underwriting Limited; Omega Underwriting Agents Ltd.; Society of Lloyd's; and Lloyd's TSB Group. (Docket No. 1). Approximately two weeks later, Plaintiff filed his Amended Complaint naming all the aforementioned Defendants, except for Raphael & Associates; thus, that party is no longer involved in this action.

Defendants Advent Underwriting Limited and Omega Underwriting Agents, Ltd., self-named as Certain Underwriters at Lloyd's, London ("Underwriters"), filed an Answer on January 5, 2010 (Docket No. 79), and then an Amended Answer on January 7, 2010. (Docket No. 83). Between mid-December 2009 and early March 2010, the remaining Defendants have all filed motions to dismiss

---

[20]

Plaintiff's requests for consequential damages in the amount of $15,000,000 and punitive damages in the amount of $150,000,000 are improperly pled in violation of W.D. Pa. L.R. 8. This issue will be more fully dealt with in a memorandum opinion, to follow, addressing Defendant Conway E & S, Inc. and RTI's Motion to Dismiss and to Strike Plaintiff's Amended Complaint. (Docket No. 103)

Plaintiff's Amended Complaint. (Docket Nos. 33, 61, 85, 100, 103, 108, 125, 135).  The subject motion, Champion's Motion to Dismiss and/or for Summary Judgment (Docket No. 33) was filed on December 14, 2009. Plaintiff filed his Response in opposition on January 19, 2010 (Docket No. 92), the deadline set by the Court. (Text Entry, 12/15/09). Champion filed its Reply Brief in Support of the motion on January 27, 2010. (Docket No. 102).  Given Plaintiff's reliance on a portion of one of the subject insurance policies filed as an attachment to his Response (Docket No. 92-1), upon this Court's Order (Docket No. 143),[21] Plaintiff filed copies of the two insurance polices at issue on April 13, 2010. (Docket No. 144).[22] As the parties' briefing has concluded, Champion's motion is ripe for disposition.

## IV.     Standard of Review

### A.     Rule 12(b)(6) Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and Fed. R. Civ. P. 8(a)(2)(a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief."). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil

---

[21]

In ordering Plaintiff to file the subject insurance policies, the Court considered the fact that neither Plaintiff nor any Defendant, in all of their myriad of filings, had provided the Court with a full and complete certified copy of the subject policies.

[22]

To date, no party has challenged the accuracy of this filing. Rather, on April 23, 2010, Defendants Conway E & S, Inc. and Associates of Risk Transfer, Inc., doing business as RTI Insurance Services, moved to have the policies deemed to be exhibits to Plaintiff's Amended Complaint. (Docket No. 148). The Court granted said motion, thereby making the insurance policies identified as CONW-51534-07 and CONW-51536-08 exhibits 1 and 2, respectively, to Plaintiff's Amended Complaint. (Docket No. 150); *see also* note 9, *supra*.

actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The Court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "'plausible claim for relief.'"). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Even after *Twombly* and *Iqbal*, when reviewing a *pro se* complaint, a court must use a less stringent standard than if the complaint had been drafted by counsel and must construe a *pro se* complaint liberally. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)(quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). However, *pro se* attorneys – or in Allegrino's case, a *pro se* disbarred attorney – "typically 'cannot claim the special consideration which the courts customarily grant to *pro se* parties.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d.Cir. 2001)(quoting *Harbulak v. Cnty. of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)), *accord, e.g., Glatzer*

*v. Barone*, 614 F.Supp.2d 450, 451 n.1 (S.D.N.Y. 2009). Although Plaintiff filed this action *pro se*,, the Court takes Plaintiff's status as a disbarred attorney and former member of the California state bar into account in considering the degree of latitude that should be afforded him. *See Taylor v. Alvarez*, Civ. A. No. 07-23003, 2008 U.S. Dist. LEXIS 108847, at *1 n.2 (S.D. Fla. Apr. 21, 2008).

### B.    Consideration of Documents Outside the Pleadings

Generally, the only documents a court may consider at the motion to dismiss stage, without converting the motion to dismiss into a motion for summary judgment, are those documents attached to the complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, in evaluating a Rule 12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records ... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D. Pa. July 15, 2008)(citing *Pension Benefit*, 998 F.2d at 1196)). A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir. 2008)(quoting *Pension Benefit*, 998 F.2d at 1196). Otherwise, a plaintiff with a legally insufficient claim could survive a motion to dismiss "simply by failing to attach a dispositive document on which it relied." *Pension Benefit*, 998 F.2d at 1196.

Here, Champion submitted three attachments with its motion that were not filed with Plaintiff's Amended Complaint: (1) the recorded statement transcription of Plaintiff taken by Harold Kern of Champion on August 27, 2008; (2) a document from Robert Jones at Raphael & Associates to Mr. Kern concerning Liberty's policy claims; and (3) a letter dated August 28, 2008 from Mr.

Kern to Plaintiff. (Docket No. 33-1 - 33-3).  At the outset, the Court notes that Plaintiff does not dispute the authenticity of any of these documents. *See Pension Benefit*, 998 F.2d at 1196. Also, in responding to Champion's motion, Plaintiff submitted additional material, including his own affidavit, a document titled "Non-Waiver Agreement" signed by Plaintiff and Mr. Kern, a print out from Champion's website, and what appears to be a page from one of the subject insurance policies. (Docket No. 92-1).  As noted above, given this filing and the fact that none of the parties provided the Court with full and complete copies of the policies, the Court ordered Plaintiff to file the same. (Docket Nos. 143, 144).

        In the case of *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a district court may consider a "document *integral to or explicitly relied* upon in the complaint," without converting a motion to dismiss to a motion for summary judgment. *Id.* (emphasis in original).  Here, Plaintiff explicitly relied upon the insurance policies in his Amended Complaint, as well as correspondence between him and Champion. (*see* Docket No. 3 at 7, 9). Therefore, the Court may consider the letter dated August 28, 2008 sent to Plaintiff by Champion, the "Non-Waiver Agreement," and the insurance policies without requiring the conversion of Champion's motion into one for summary judgment.  *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989). However, the Court will not consider Plaintiff's affidavit (Docket No. 93-1 at 1-3), because affidavits filed in opposition to a motion to dismiss "clearly comprise [] a matter outside the pleading," which are properly excluded by the Court. *Greer v. Smith*, 59 Fed. Appx. 491, 492 (3d Cir. 2003)(not precedential)(citing *Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000)). Additionally, the Court will not consider the other remaining documents as they are neither relied

15

upon by Plaintiff nor essential to the Court's opinion. The Court will, therefore, analyze the motion under Rule 12(b)(6).

## V.    Discussion

A federal court sitting in diversity must apply the substantive law as decided by the state's highest court.    *Travelers Indem Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997)(citations omitted).  The parties here do not dispute the application of Pennsylvania law to this matter. *See also Compagni des Bauxites*, 880 F.2d 685, 689-91 (3d Cir. 1989)(applying Pennsylvania law to a contract action as that was the placing of contracting, the place of the property subject to the contract, and the place of performance). However, Plaintiff does assert a potential cause of action based on New York law. (*See* Docket No. 3 at 25-26).  At this stage, the Court need not engage in a choice of law analysis and Pennsylvania law will be applied. Later, in this Opinion the Court will address and dismiss the New York claim against Champion.[23]

### A.    Breach of Contract Claims

To the extent that Plaintiff's claims for breach of contract are directed at Champion, Champion argues that these claims fail because it did not issue the insurance policies and was not even a party to or in privity with the parties to the policies. (Docket No. 34 at 3). It further argues that it is not an insurance company; rather, with respect to Liberty's policy claims, it acted only as an independent adjuster retained to investigate the claims. (*Id.*).  As there is no contractual relationship between Champion and Liberty, Champion maintains that it cannot be liable on any breach of contract theory. (*Id.* at 3-4).  Therefore, because Champion owed no duty to Liberty, and

---

[23]

Champion has challenged the applicability of New York law to Plaintiff's claim number 11. (Docket No. 34 at 14-15). Said challenge will be addressed by the Court *infra*, in Section V(E).

in turn, Plaintiff, all of Plaintiff's breach of contract claims against it should be dismissed. (*Id.* at 5).

In response, Plaintiff contends that Harold Kern, as president of Champion (*see* Docket No. 92-1 at 8), entered into an agreement with him "to represent the interests of both Plaintiff and Defendants at Lloyds in adjudicating losses sustained to Plaintiff." (Docket No. 92 at 4). In support of this contention, as noted *supra*, Plaintiff submitted a document dated August 26, 2008, titled "Non-Waiver Agreement," which he contends is evidence of the contract between Champion and Plaintiff. (*Id.*; Docket No. 92-1 at 6). Plaintiff argues that because Champion breached this agreement and he was damaged as a result, his breach of contract claims against Champion should survive. (Docket No. 92 at 4).

In reply, Champion points out that Plaintiff concedes that it did not issue the insurance polices in question. (Docket No. 102 at 1; Docket No. 92 at 6). Champion further points out that the document on which Plaintiff relies is a standard non-waiver agreement through which the rights of the insurer to contest coverage on any basis were not waived by the investigation being undertaken by Champion and that this document in no way demonstrates a contractual relationship between Champion and Plaintiff. (Docket No. 102 at 2). To this end, Champion defined its role to Plaintiff in a letter dated August 28, 2008, which advises Plaintiff that Champion was retained by the administrator for the insurance company, which is Certain Underwriters at Lloyd's of London. (*Id.*).

To establish a breach of contract claim, a plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Wedemeyer v. United States Life Ins. Co.*, Civ. A. No. 05-6263, 2007 U.S. Dist. LEXIS 15742, at * 52 (E.D. Pa. Mar. 6, 2007)(quoting *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Only a party to a contract can be liable for breach of that contract.

*Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991). Where an insured's insurance company hires an insurance adjuster to handle or investigate a claim, there is no contractual privity between the insured and the insurance adjuster in the absence of a separate contract between them. *Wedemeyer*, 2007 U.S. Dist. LEXIS 15742, at *52 (citing *Hudock v. Donegal Mutual Ins. Co.*, 264 A.2d 668 (Pa. 1970)).

Plaintiff has conceded that Champion did not issue the policies in question, however, he claims that Champion assumed the insurer's contractual obligation to investigate the losses and adjudicate the claims. (Docket No. 92 at 6). The document upon which Plaintiff relies for this contention, as noted above, is titled "Non-Waiver Agreement," signed by Harold E. Kern and Plaintiff, and states the following:

> IT IS HEREBY UNDERSTOOD AND AGREED by and between the parties signing this agreement, that any action taken by the hereinafter named Insurance Company or Companies in investigating the cause of loss, or investigating and ascertaining the amount of sound value, or the amount of loss and damage which occurred on April [t]hrough August, 2008 shall not waiver [sic] or invalidate any of the terms or conditions of any policy or policies, and shall not waive or invalidate any rights whatever of either the parties to this agreement.

> IT IS FURTHER UNDERSTOOD AND AGREED that neither the examination of the insured or of any other person, the examination of books of account, bills, invoices, or other vouchers of the insured or any other person, the request of any other information, or the furnishing thereof, or the incurring of any trouble or expense by the insured shall waiver [sic] or invalidate any of the terms and conditions of the policy or policies, or any defense thereunder.

> THE INTENT of this agreement is to preserve the rights of all parties hereto, and to permit an investigation of the cause of loss, the investigation and ascertainment of the amount of sound value, or the amount of loss and damage, of any of them *without regard to the liability of the hereinafter named Insurance Company or Companies*.

(Docket No. 92-1 at 6)(emphasis added).

For the following reasons, the Court does not agree with Plaintiff that these terms created a contractual duty on the part of Champion.

By definition, a non-waiver agreement is an agreement whereby the insurer agrees to provide coverage on a temporary basis until an investigation or other future events can be concluded. *Draft Systems, Inc. v. Alspach*, 756 F.2d 293, 296 (3d Cir. 1985). This device is used by insurance companies to reserve the right to assert matters at a later date which may cast doubt on coverage. *Draft Systems, Inc.*, 756 F.2d at 296. It is designed to serve "the interests of the parties to the insurance policy but is helpful to claimants and the courts." *Id.* Therefore, an "insurance company may defend the action with the express understanding that it is not admitting coverage by so doing." *Id.* (quoting *Gedeon v. State Farm Mut. Auto Ins. Co.*, 188 A.2d 320, 322 n.3 (Pa. 1963)).

Here, in undertaking an investigation of Plaintiff's claims, Champion owed a duty to its principals, alleged to be the third party claim administrator, Raphael & Associates (no longer parties to this suit), and to the insurer, Underwriters. (Docket No. 33-3 at 1). However, Champion's actions do not serve to create a contractual obligation to Plaintiff. *Hudock*, 264 A.2d at 672. Plaintiff was informed of this fact in the letter dated August 28, 2008 from Mr. Kern confirming his receipt of Plaintiff's recorded statement taken on August 27, 2008. (Docket No. 33-3 at 3). In particular, the letter stated that Champion was retained by the administrator for Plaintiff's insurance company, "which is Certain Underwriters at Lloyd's London," solely to collect information about the cause of loss at 138 Aurilles Street to submit for review by Certain Underwriters at Lloyd's. (*Id.*).

Additionally, the non-waiver agreement executed between Plaintiff and Champion, despite Plaintiff's contentions to the contrary, did not create a contractual duty on the part of Champion. This

document was utilized to ensure that the insurer's policy rights were not affected by Champion's investigation. *See Draft Systems, Inc.*, 756 F.2d at 296.  Indeed, the agreement specifically states that the intent behind it was to preserve the rights of all the parties and to permit an investigation by Champion "without regard to the liability of the hereinafter named Insurance Company or Companies." (Docket No. 92-1 at 6). This document does not state it was imposing any contractual obligation of the insurer upon Champion or that Champion was entering into an agreement to represent Plaintiff's interests. Plaintiff is also presumed to have read and understood these terms. *Schoble v. Schoble*, 37 A.2d 604 (Pa. 1944); *see also Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169, 1174-75 (E.D. Pa. 2000). This is particularly true given Plaintiff's prior status as an attorney licensed to practice law in California.[24]  Moreover, his assent to those terms is evinced by his signature. *Simeone v. Simeone*, 581 A.2d 162, 165-66 (Pa. 1990); *see also Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1253 (3d Cir. 1987)(a plaintiff is bound to the legal consequences of signing a form.).

Plaintiff's argument that he has a private cause of action because Mr. Kern is a public adjuster, subject to regulation under the Public Adjuster Law and the Consumer Protection Law, is also unavailing. The Pennsylvania insurance adjusters' statute, 63 P.S. § 1601, defines a "public adjuster" as follows:

> Any person, partnership, association or corporation advertising, soliciting business or holding himself or itself out to the public as an adjuster of claims for losses or damages arising out of policies of insurance, surety or indemnity upon property, persons or insurable business interests within this Commonwealth, and receiving any compensation or reward for the giving of advice or assistance to the

---

[24]

*See* note 1, *supra*.

> insured in the adjustment of claims for such losses, or who for compensation or reward, whether by way of salary or commission or otherwise, directly or indirectly, solicit business, investigate or adjust losses or advise the insured with reference to claims for losses on behalf of any other person, partnership, association or corporation engaged in the business of adjusting losses. The term does not include an agent or employee of an insurance company, association or an exchange, through whom a policy of insurance was written, in adjusting loss or damage under such policy, nor does it include a broker or agent acting as an adjuster if the services of the agent or broker in the adjustment are without compensation.

63 P.S. § 1601 (2009). This definition does <u>not</u> include the situation where a party, here Champion, is retained to act on behalf of an insurer to adjust loss or damage under a policy. *Id.*

Plaintiff's argument based on his understanding of the "RPA" designation on Champion's website for Mr. Kern is equally misplaced. (Docket No. 92 at 4; Docket No. 92-1 at 8); *see also* http://www.championclaimservice.com/dyncat.cfm?catid=627 (last visited April 8, 2010).  This designation does not stand for "public adjuster," rather, it denotes Mr. Kern's participation in an organization of Registered Professional Adjusters. (Docket No. 102 at 2,  note 1). On this point, Champion's website provides that its staff are members of the Pennsylvania Association of Independent Insurance Adjusters, and the National Association of Independent Insurance Adjusters, professional organizations comprised of independent insurance adjusters. *See* http://www.championclaimservice.com/aboutus.cfm (last visited April 8, 2010); http://www.paiia.com/ (last visited April 8, 2010); and http://www.naiia.com/ (last visited April 8, 2010).[25]  Consequently, the Court finds that Mr. Kern was not acting as a public adjuster. Therefore,

---

[25]

Champion's website further provides that it supplies services to insurance carriers, self insureds, legal defense firms, third party administrators, and others who are in engaged in services relating to the management of insurance claims. *See* http://www.championclaimservice.com/aboutus.cfm  (last visited April 21, 2010). Pertinent here, it further states that Champion works solely for the defense and does not engage in separate plaintiff investigative services.  *Id.*

any claims asserted by Plaintiff in reliance upon such a contention fail.

Based on the foregoing, the Court finds that Plaintiff has failed to establish a contractual relationship with Champion. Therefore, Plaintiff's breach of contract causes of action against Champion, i.e. Claims numbered 1 through 6, are dismissed, with prejudice.

### B.    Negligence Claims

Champion next argues that Plaintiff has failed to state a claim against it for negligence in claim numbers 7 and 8, as there are no allegations therein specifically asserted against Champion. (Docket No. 34 at 6). Nevertheless, Champion argues that because Plaintiff has alleged solely economic loss and seeks only monetary damages for his two negligence claims, he is precluded from recovering the same through tort under the economic loss doctrine.[26] (*Id.*). Therefore, to the extent that Plaintiff seeks to assert negligence against Champion, it requests that said claims be dismissed. (*Id.*). In his Response to Champion's motion (Docket No. 92), Plaintiff does not offer any argument in opposition to Champion's challenge to his negligence claims.

To demonstrate a claim under Pennsylvania law for negligence, a claimant must allege enough factual matter showing (1) a duty of care owed by the defendant, (2) a breach of that duty, (3) a causal connection between the defendant's conduct and the claimant's injury, and (4) actual harm or damage suffered. *Faylor v. Szupper*, Civ. A. No. 08-996, 2010 U.S. Dist. LEXIS 30611, at

---

[26] A close relative of the gist of the action doctrine, the economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003); *see also Knit With v. Knitting Fever, Inc.*, Civ. A. No. 08-4221, 2009 U.S. Dist. LEXIS 98217, at *14 (E.D. Pa. Oct. 20, 2009)(citing *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008)). The doctrine is concerned with two main factors: foreseeability and limitation of liability. *Sovereign Bank*, 533 F.3d at 175. Because the Court finds that Plaintiff has failed to sufficiently plead a negligence claim against Champion, and because he has not opposed the dismissal of same, the Court need not discuss whether the economic loss doctrine bars Plaintiff's recovery under a negligence theory.

*35 (W.D. Pa. Mar. 30, 2010)(citing *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)).

Here, in contravention of *Twombly* and *Iqbal*, nowhere in claim numbers 7 and 8 does Plaintiff mention Champion or allege that Champion owed him a duty of care to him. *Twombly*, 127 S.Ct. at 1965 ("stating ... a claim requires a complaint with enough factual matter to suggest the required element."). Instead, these claims are specifically directed at Defendants RTI and Raphael & Associates, City of Duquesne, Twin Rivers Council of Government, Steel Valley Council of Government, and W & J Contractors, Inc. (*See* Docket No. 3 at 21-22). Accordingly, Plaintiff has failed to sufficiently set forth claims for negligence against Champion. In light of the same and Plaintiff's lack of opposition to Champion's request for dismissal of these claims, Plaintiff's causes of action for negligence in claim numbers 7 and 8, to the extent they are directed against Champion, are dismissed, with prejudice.

### C.    UTPCPL Claim

Champion next moves to dismiss Plaintiff's UTPCPL count in claim number 9 on the basis that first, Plaintiff never entered into a commercial or contractual transaction with Champion, and second, Plaintiff's claim is based on property purchased solely for business and/or investment use rather than personal use. (Docket No. 34 at 9-11). Additionally, Champion contends that because Plaintiff's allegations are premised on the non-payment of his policy claims, i.e. non-feasance, and not mis-feasance, any alleged non-payment of policy claims is not actionable. (*Id.* at 11). Champion further contends that the economic loss doctrine bars any recovery under a UTPCPL theory. (*Id.* at 12). As with his negligence claims, Plaintiff has not opposed Champion's request for dismissal of his UTPCPL claim. (Docket No. 92).

Pennsylvania's UTPCPL, 73 P.S. §§ 201-1 *et seq.*, is a remedial statute designed to protect

consumers from "fraud and unfair or deceptive business practices." *Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007)(other citations omitted); *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008)(citation omitted). Under section 201-9.2, a private cause of action under the UTPCPL is available only to a consumer who suffered an "ascertainable loss as a result of" the defendant's prohibited action.[27] *Weinberg v. Sun Co.*, 777 A.2d 442, 445-46 (Pa. 2001). Inherent in this rule is the requirement that the consumer alleged that it purchased or leased the defendant's merchandise as a result of an allegedly unfair trade practice. *WWE v. Big Dog Holdings, Inc.*, 280 F.Supp.2d 413, 446 (W.D. Pa. 2003). In other words, a consumer must be in privity of contract with the defendant in order to having standing to pursue a UTPCPL claim. *Id.*

The Court finds here that Plaintiff has failed to assert sufficient factual allegations in support of his UTPCPL claim against Champion to withstand dismissal under *Twombly* and *Iqbal*. As the Court has already ruled that Plaintiff and Champion are not in privity of contract, Plaintiff does not have standing to pursue a UTPCPL claim against Champion under the facts alleged. Accordingly, Plaintiff's UTPCPL claim against Champion is dismissed, with prejudice.

**D.     Bad Faith**

Champion next moves to dismiss Plaintiff's claim number 10 asserting bad faith, arguing that

---

[27]

Section 201-9.2(a) specifically provides, in pertinent part:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater.

73 P.S. § 201-9.2 (2009).

said claim fails because it is not an insurer, and thus, not subject to Pennsylvania's bad faith law, 42 Pa. C.S.A. § 8371. (Docket No. 34 at 12-13). Plaintiff counters that because Champion "did assume at least part of the insurer's contractual obligation" to investigate the losses, and conspired with the insurers, "the Defendant's [sic] at Lloyds [sic]," it is liable for bad faith in denying Plaintiff insurance proceeds. (Docket No. 92 at 6-7). Plaintiff further asserts that Champion should be deemed an insurer because its actions "as an 'arm' of the Lloyds Defendants [sic]" were "not in line with the spirit of § 8371." (*Id.* at 7).

Pennsylvania's Bad Faith Insurance statute prohibits insurance companies from acting in bad faith toward insureds. 42 Pa. C.S.A. § 8371. The statues provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

*Id.*; *see also Nordi v. Keystone Health Plan West, Inc.*, No. 1476 WDA 2008, 2010 Pa. Super. LEXIS 12, at *11 (Pa. Super. Ct. Jan. 22, 2010).

A claim for bad faith under 42 Pa. C.S.A. § 8371 can be brought only against an insurer, not an insurance adjuster. *Lindsey v. Chase Home Financ, LLC*, Civ. A. No. 06-12200, 2006 U.S. Dist. LEXIS 61893, at *3-4 (M.D. Pa. Aug. 30, 2006). For purposes of the statute, there is no simple method for determining who is the insurer. *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 498 (Pa. Super. Ct. 2004). As a result, courts have taken a fact-based approach, focusing on two factors: "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the

25

extent to which the company acted as an insurer." *Brown*, 860 A.2d at 498; *see Barry v. Ohio Cas. Group.*, Civ. A. No. 04-188, 2007 U.S. Dist. LEXIS 2684, at *4 (W.D. Pa. Jan. 12, 2007). The most important factor is the second because it focuses on the true actions of the parties. *Id.*  Courts have also looked to other statutes in attempting to define "insurer." For example, the Insurance Department Act of 1921, as amended, 40 Pa. Stat. § 221.3, defines an insurer as: "'[a] person who is doing, has done, purports to do, or is licensed to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization or conservation by any insurance commissioner.'" *Lindsey v. Chase Home Financ, LLC*, Civ. A. No. 06-12200, 2006 U.S. Dist. LEXIS 61893, at *4 (M.D. Pa. Aug. 30, 2006)(citing *Southeastern Pa. Transp. Auth. v. Holmes*, 835 A.2d 851, 856-57 (Pa. Commw. Ct. 2003)).

It appears that Plaintiff's bad faith allegations rely on Champion's actions in this case, which consisted of conducting an investigation into Liberty's supposed insurance coverage with Advent Underwriting Limited, Omega Underwriting Agents Ltd., Conway E & S, Inc. Society of Lloyd's, and Lloyd's TSP Group. Even accepting Plaintiff's allegations as true, he has not pled that Champion issued the insurance policies, assumed any risks or contractual obligations under the policies, or was licensed to conduct insurance business in Pennsylvania. (Docket No. 3). Indeed, Plaintiff has conceded that Champion did not issue the insurance policies. (Docket No. 92 at 6). Further, the declaration sheet identifies Certain Underwriters at Lloyd's as the insurer.[28] (Docket No. 144 at 3, 33).  Simply because Champion may have provided adjustment services to the insurer does not make it a party to each underlying insurance contract. *Lockhart v. Federal Ins. Co.*, Civ. A. No.

---

[28]

*See also* discussion *supra*, in Section II(B), at pages 3-4.

96-5330, 1998 U.S. Dist. LEXIS 4046, at *3 (E.D. Pa. Mar. 30, 1998).  Pennsylvania law is clear that only an insurer responsible for paying benefits under an insurance policy is subject to section 8371, *Lindsey*, 2006 U.S. Dist. LEXIS 61893, at *3-4; thus, Plaintiff's allegations fall woefully short of establishing a viable bad faith claim against Champion.[29]

In light of the foregoing along with the fact that the Court has already found that Plaintiff has not sufficiently pled facts demonstrating that a contract exists with Champion, the Court finds that Plaintiff's bad faith claim against Champion fails; therefore, it is dismissed, with prejudice.

### E.  Claim Under New York Law

Champion lastly moves to dismiss Plaintiff's Claim number 11 for breach of the implied covenant of good faith under New York law on the grounds that New York law is inapplicable because the insured risk was located in Pennsylvania. (Docket No. 34 at 14-15). Additionally, as previously argued, because Champion is not a party to the insurance policies nor in privity of contract with Plaintiff, it cannot be held liable under New York law. (*Id.*).

Plaintiff counters that because the "situs of the loss" of his insured business personal property is Newburgh, New York,[30] the state where he is also located, and that the policies provided nationwide coverage, Champion should be liable to Plaintiff in New York for consequential damages for Champion's alleged breach of its duty of good faith. (Docket No. 92 at 8). Plaintiff refers to a

---

[29]

In his Response, under the subheading "Liability for Bad Faith," Plaintiff appears to be asserting a separate, new claim for a breach of the covenant of good faith, with citation to Pennsylvania case law.  (Docket No. 92 at 4-5). However, a separate and distinct claim for a breach of the duty of good faith, apart from a breach of an insurance contract claim, is not recognized under Pennsylvania law. *See Smith v. Lincoln Benefit Life Co.*, Civ. A. No. 08-1324, 2009 U.S. Dist. LEXIS 24941, at *35-38, 55-56 (W.D. Pa. Mar. 23, 2009). Therefore, to the extent that Plaintiff attempts to state such a claim against Champion, it is dismissed.

[30]

The Court questions whether Plaintiff has insurance on this location.

page from the subject insurance policies, which provides that the coverage territory is the United States of America, Puerto Rico and Canada. (Docket No. 92-1 at 10; *see also* Docket No. 144 at 11. 41). Plaintiff also cites to *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co.*, 886 N.E. 2d 127 (N.Y. Ct. of App. 2008) for the proposition that Champion is liable for consequential damages done to his business personal property under New York law. (Docket No. 92 at 9).

As this Court sits in Pennsylvania, the choice of law rules of Pennsylvania apply. *Klaxon Co. v. Stentor Electrical Manufacturing Co., Inc.*, 313 U.S. 487, 496 (1941). When examining insurance contracts, the court "must apply the law of the state having the most significant contacts or relationships with the particular issue...the weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." *Caputo v. Allstate Ins. Co.*, 495 A.2d 959, 961 (Pa. Super. Ct. 1985)(citation omitted). "The state where property is located has a more compelling interest in what happens to the property because the location of the property will have at least some effect on the cost of insurance." *Hartford Fire Ins. Co. v. WSR Corp.*, 2000 U.S. Dist. LEXIS 9870, at *3 (E.D. Pa. July 14, 2000)(citation omitted).

In his Amended Complaint, Plaintiff alleges that some of his business electronic property was damaged by the vandalism that occurred at 138 Aurilles Street in Duquesne, Pennsylvania and was then moved to Newburgh, New York to be stored, but was thereafter discarded by a building worker. (Docket No. 3 at 8). He further avers that the subject insurance policies covered damage to both Plaintiff's real and personal property, located in Pennsylvania. (*Id.* at 4). Based on these averments, it appears that Plaintiff's personal property was damaged while in Pennsylvania and then moved to New York for storage, only. Therefore, because the location of the insured risk as well as the place of the initial loss is Pennsylvania, the law of this Commonwealth governs any claims under the

instant insurance policies for alleged damage to Plaintiff's business personal property. The Court further finds that Plaintiff's contention that New York law applies because the policies provide for nationwide coverage is without merit. The policies specifically state that they cover loss or damage *within the coverage territory*, which includes the United States. (Docket No. 144 at 11, 41). This provision, however, has no bearing on which individual state's law would apply to a dispute under the policies. Further, the policies do not contain a forum selection clause, delineating what jurisdiction's law would control in the event of a contract dispute.

Finally, the case on which Plaintiff relies, *Bi-Economy Mkt., Inc.*, is not pertinent to the instant motion. There, the Court of Appeals of New York analyzed whether consequential damages not within the limits of coverage under the policy were recoverable by an insured based on the insurer's failure to act in good faith. 886 N.E.2d at 128-29. It did not address whether an independent adjuster, such as Champion, could be liable for consequential damages that are the natural and probable consequence of a breach of contract. *Id.* at 131-33.

Consequently, in light of the foregoing and the Court's prior ruling that there is no privity of contract between Champion and Plaintiff, Plaintiff's Claim number 11, to the extent that it is made against Champion, is dismissed, with prejudice.

**VI.      Conclusion**

For the above reasons, the Court finds that all of Plaintiff's claims against Champion fail. Consequently, Champion's Motion to Dismiss, or in the alternative, Motion for Summary Judgment

(Docket No. 33) is GRANTED, in the form of a dismissal under Rule 12(b)(6). An appropriate order

follows.

<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge

Date:      April 26, 2010.
CC/ECF:   All counsel of record.