**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY ALLEGRINO, as                    )
assignee of Liberty Immobiliare, Inc.,   )
                                         )
                Plaintiff,               )
                                         )
        v.                               )        Civil Action No. 09-1507
                                         )        Judge Nora Barry Fischer
CONWAY E & S, INC., et al,               )
                                         )
                Defendants.              )

<u>**MEMORANDUM OPINION**</u>

**I.       Introduction**

As set forth more fully in the Court's Memorandum Opinion addressing Defendant Champion Claim Service, Inc.'s Motion to Dismiss (Docket No. 155), this action involves eleven (11) claims[1] brought by *pro se* Plaintiff, Anthony J. Allegrino against various Defendants related to allegations of damage to real property and personal business property and causes of action seeking to collect insurance proceeds under two insurance policies Plaintiff's assignor, Liberty Immobiliare, Inc. ("Liberty"), had secured to provide coverage for said property. (Docket No. 3; Docket No. 155 at 1-4). This matter is presently before the Court on a motion to dismiss and/or for summary judgment and to strike portions of Plaintiff's Amended Complaint by Defendants Conway E & S, Inc. ("Conway")[2] and Associates of Risk Transfer, Inc., doing business as RTI Insurance Services[3]

---

[1]

As the Court previously noted (Docket No. 155 at 2), Plaintiff uses the term "claim," rather than "count," to identify his eleven causes of action. (Docket No. 3). In addressing the same, when referencing Plaintiff's Amended Complaint, the Court will use the term "claim."

[2]

Conway is an independent brokerage firm that functions as a wholesale insurance broker between suppliers of insurance and the insurance agencies who represent the policyholder. *See* http://www.conwayes.com/about.htm (last

("RTI," collectively "Defendants").[4] (Docket Nos. 103, 148). Defendants' motion to dismiss and/or for summary judgment will be addressed as a motion for summary judgment under Rule 56 as to claims numbered 1-6, and 10-11, and as a motion to dismiss as to claim number 8. For the reasons outlined below, Defendants' motions are granted, in part, and denied, in part.

## II.    Factual and Procedural Background

As to the present motion, the following pertains.  On January 27, 2010, Defendants filed their Motion to Dismiss and to Strike (Docket No. 103), to which Plaintiff filed a Response on February 15, 2010. (Docket No. 138). Defendants filed a Reply on February 25, 2010. (Docket No. 131). On April 22, 2010, Defendants moved to have the two subject insurance policies (Docket No. 144) deemed exhibits to Plaintiff's Amended Complaint or to have their motion (Docket No. 103) be considered as one for summary judgment. (Docket No. 148). They also sought leave of Court to file a supplemental brief. (Docket No. 147). That same day, the Court granted said requests, thereby making the policies identified as CONW-5153407 and CONW-51536-08 exhibits 1 and 2 to Plaintiff's Amended Complaint. (Docket No. 149, 150, 151). Defendants' Supplemental Brief was filed shortly thereafter. (Docket No. 152).

On April 30, 2010, Plaintiff filed a motion to have his Amended Complaint (Docket No. 3) deemed amended to delete his claim number 9 under Pennsylvania's Unfair Trade Practice and

---

visited April 28, 2010).

3

For a discussion concerning RTI, see the Court's prior Memorandum Opinion (Docket No. 155) at pages 8-9, and note 17.

4

As discussed more fully *infra* in Section II, Defendants' request for dismissal of claim number 9 and to strike Plaintiff's demands for specific amounts of punitive and consequential damages are denied, as moot, given the Court's granting of Plaintiff's unopposed motion to have his Amended Complaint deemed amended to delete claim number 9 and these demands for relief. (Docket No. 161, 162).

Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.*, in paragraphs 153 and 154, his demands for specific amounts of consequential and punitive damages in paragraphs 9 and 10 on page 27, and his request for damages under the UTPCPL in paragraph 11 on page 27. (Docket No. 161). Given the remaining Defendants' lack of objection, on May 4, 2010, the Court granted said motion and Plaintiff's Amended Complaint (Docket No. 3) was thereby deemed amended. Accordingly, Plaintiff's claim number 9 under the UTPCPL and request for damages under the same were dismissed, with prejudice as to all remaining Defendants; and his demands for specific amounts of consequential and punitive damages were deleted and replaced with terms permitting the award of such damages in amounts to be determined at trial, if the evidence at trial presents sufficient bases for such awards. (Docket No. 162). In light of the same, Defendants' motion to dismiss and/or for summary judgment as to Plaintiff's claim number 9 is denied, as moot. Additionally, Defendants' motion to strike Plaintiff's requests for specific amounts of consequential and punitive damages is denied, as moot. The Court now turns to the remainder of Defendants' motions.

## III.  Standards for Reviewing Rule 12(b)(6) and Rule 56 Motions

### A.  Rule 12(b)(6) Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and FED. R. CIV. P. 8(a)(2)(a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief."). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The Court further explained that

although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "'plausible claim for relief.'"). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

When reviewing a *pro se* complaint, a court must use a less stringent standard than if the complaint had been drafted by counsel and must construe a *pro se* complaint liberally. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)(quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)); *see also Wishnefsky v. Salameh*, Civ. A. No. 08-128J, 2009 U.S. Dist. LEXIS 124600, at *9 (W.D. Pa. Dec. 22, 2009). *Pro se* attorneys – or in Plaintiff's case, a *pro se* disbarred attorney – "typically 'cannot claim the special consideration which the courts customarily grant to *pro se* parties.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d.Cir. 2001)(quoting *Harbulak v. Cnty. of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)), *accord, e.g., Glatzer v. Barone*, 614

4

F.Supp.2d 450, 451 n.1 (S.D.N.Y. 2009); *see also Taylor v. Alvarez*, Civ. A. No. 07-23003, 2008

U.S. Dist. LEXIS 108847, at *1 n.2 (S.D. Fla. Apr. 21, 2008).

### B.    Consideration of Matters Outside the Record

At the motion to dismiss stage, a court may generally only consider documents attached to

a complaint, without converting the motion into a motion for summary judgment. *Pension Benefit*

*Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). But, in evaluating a Rule

12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court

files and records ... and documents referenced in the complaint or essential to a plaintiff's claim

which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area*

*Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D. Pa. July 15, 2008)(citing

*Pension Benefit*, 998 F.2d at 1196)).

With his Response to the motion (Docket No. 128), Plaintiff submitted his own affidavit and

the declaration page from the first issued insurance policy, number CONW-51534-07. (Docket No.

128-1).  As noted, both insurance policies (Docket No. 144) have since been made exhibits 1 and

2 to Plaintiff's Amended Complaint. (Docket No. 150).  Furthermore, because the insurance policies

are integral to and explicitly relied on by Plaintiff in asserting his eleven claims (*see* Docket No. 3),

the Court may consider the same in analyzing the instant motion without requiring the conversion

of the motion into one for summary judgment. *See In re Burlington Coat Factory Secs. Litig.*, 114

F.3d 1410, 1426 (3d Cir. 1997). The Court also takes into consideration the Lloyd's Defendants'

Answer. (Docket No. 83). Because the Court will also look to Plaintiff's affidavit (Docket No. 128-1

at 1-3) in analyzing claims numbered 1-6, and 10-11, the Court converts Defendants' motion to one

for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) with regard to these

5

claims.[5] *Greer v. Smith*, 59 Fed. Appx. 491, 492 (3d Cir. 2003)(not precedential)(citing *Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000)(affidavits filed in opposition to a motion to dismiss "clearly comprise [] a matter outside the pleadings."). The Court will then address Defendants' challenge to claim number 8 and Plaintiff's request for punitive relief based on claim number 7 pursuant to Rule 12(b)(6).

### C.      Rule 56 Standard

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether the dispute is genuine, the court's function is not to weigh the

---

[5]

Rule 12(d) provides that if, on a motion to dismiss under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

evidence, to determine the truth of the matter, or to evaluate credibility.   The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir.1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir.1994)).   In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir.2007).

Defendants' filing of their motion to dismiss in the alternative as a motion for summary judgment is sufficient to place the parties on notice that summary judgment might be entered. *Latham v. United States*, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(not-precedential)(citing *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).   In addition, given Defendants' alternative filing, the parties had the opportunity to present further evidence in support of their respective positions, but declined to do so.   Notwithstanding the same, upon consideration of the issues presented by Defendants' motion, the current record, i.e. the pleadings, the subject policies, and Plaintiff's affidavit, is sufficient for the Court to properly evaluate Defendants' motion for summary judgment.

**IV.   Discussion**

A federal court sitting in diversity must apply the substantive law as decided by the state's highest court.   *Travelers Indem Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997)(citations omitted).   The parties here do not dispute the application of Pennsylvania law to this matter; therefore, Pennsylvania law will be applied.   *See Compagnie des Bauxites*, 880 F.2d 685, 689-91 (3d Cir. 1989). However, Plaintiff does assert a potential cause of action based on New York law. (*See* Docket No. 3 at 25-26).   At this stage, the Court need not engage in a choice of law

7

analysis and Pennsylvania law will be applied. Later, in this Opinion the Court will address and dismiss the New York claim against Defendant Conway and RTI.

A.    Claim Numbers 1 - 6, and 10 - 11

Defendants first move for summary judgment on Plaintiff's claims numbered 1-6, and 10-11 for breach of contract, bad faith under Pennsylvania law, and breach of the implied covenant of good faith under New York law, arguing that these claims fail because they are not parties to the insurance policies nor has Plaintiff pled the same. (Docket No. 104 at 4). Conway specifically argues that Plaintiff's allegation that it issued the insurance policies is without factual support and the fact that Conway operates an insurance agency does not make it a party to the polices. (*Id.* at 5).  RTI argues that these claims fail because Plaintiff has not alleged that it was an insurer. (*Id.*).  Similarly, to the extent that Plaintiff seeks relief against Defendants under Pennsylvania's bad faith statute or New York's implied covenant of good faith and fair dealing, these claims likewise fail as Defendants are not the insurer(s) on the policies. (*Id.* at 6).

In response, Plaintiff contends that because Conway signed the policy page and "is a listed party to the contracts of insurance," it is an insurer and a party to the policies. (Docket No. 128 at 3). In Plaintiff's affidavit (Docket No. 128-1), he relies on the declaration pages for his contention that Conway issued the policies and performs the functions of an insurer in partnership with Lloyd's. (*Id.*). Plaintiff specifically states in his affidavit that "[u]pon information and belief, Conway ... is also an 'underwriter' or 'insurer' with a financial interest in the [p]olicies." (*Id.*). He further states that he was informed by an employee of RTI, Byron Pryor, that RTI and Conway work together as "partners." (*Id.* at 2). Thus, Plaintiff contends that Conway and RTI are partners with the Lloyd's Defendants and co-conspirators "to the extent that they attempted to cover up in bad faith their ill

8

deeds to Plaintiff and not adjudicate Plaintiff's Claims for damages in good faith." (Docket No. 128 at 3-4). He further maintains that Conway, RTI, and the Lloyd's Defendants are each jointly and severally liable for the acts of the others. (*Id.* at 4).

In order for a defendant to be held liable for a breach of a contract, it is axiomatic that the defendant must be a party to the contract. *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991); *see also Smarttran, Inc. v. Alpine Confections, Inc.*, 352 Fed. App. 650, 656 (3d Cir. 2009)(not precedential). Where an insurance company contracts with a thirty-party broker to act as a correspondent between the insurer and the insured, there is no contractual privity between the insured and the broker, absent a separate contract between them. *See Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 352 (3d Cir. 2004).

The declaration pages of each insurance policy state that the policies are 100 % effective with Certain Underwriters at Lloyd's. (Docket No. 144 at 3, 33). The policies further state that they are "issued in accordance with the limited authorization granted to the Correspondent [Conway] by certain Underwriters at Lloyd's, London."[6] (*Id.* at 4, 34). Plaintiff is presumed to have read and understood these terms. *Schoble v. Schoble*, 37 A.2d 604 (Pa. 1944); *see also Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169, 1174-75 (E.D. Pa. 2000). While the polices were "placed by" and executed by Certain Underwriter at Lloyd's through Conway's president, Charles T. Conway, these facts alone do not create a contractual relationship between Conway and Plaintiff.

---

[6]

Black's Law Dictionary defines "correspondent" as: "1. The writer of a letter or letters. 2. A person employed by the media to report on events. 3. A securities firm or financial institution that performs services for another in place or market that the other does not have direct access to." BLACK'S LAW DICTIONARY (8th ed. 2004)(online). Conway meets the third provision of this definition. *See also Amgro, Inc. v. Lincoln Gen. Ins. Co.*, Civ. A. No. 06-472, 2008 U.S. Dist. LEXIS 21035, at *18-19 (D.N.J. Mar. 17, 2008)(discussing a "correspondent['s] agreement" between an insurer and an agent pursuant to which the agent was authorized to bind the insurer to certain types of insurance and cancel such insurance when appropriate).

Moreover, the fact that Conway acted as a correspondent in placing the policies does not make it an insurer. On this point, Pennsylvania's Insurance Department Act of 1921, as amended, 40 Pa. Stat. § 221.3, defines an insurer as: "'[a] person who is doing, has done, purports to do, or is licensed to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization or conservation by any insurance commissioner.'" *Lindsey v. Chase Home Finance, LLC*, Civ. A. No. 06-12200, 2006 U.S. Dist. LEXIS 61893, at *4 (M.D. Pa. Aug. 30, 2006)(citing *Southeastern Pa. Transp. Auth. v. Holmes*, 835 A.2d 851, 856-57 (Pa. Commw. Ct. 2003)). In making this determination, courts have taken a fact-based approach, focusing on two factors: "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as an insurer." *Brown*, 860 A.2d at 498; *see Barry v. Ohio Cas. Group.*, Civ. A. No. 04-188, 2007 U.S. Dist. LEXIS 2684, at *4 (W.D. Pa. Jan. 12, 2007).

Applying this authority, the Court finds that there is no genuine issue of material fact as to whether Conway or RTI are identified as insurers on the policies, licensed to conduct insurance business in Pennsylvania, or acted as insurers. To the contrary, Plaintiff has alleged that Conway is a Pennsylvania corporation which operates an insurance agency in Warrendale, Pennsylvania.[7] (Docket No. 3 at 3, 5) Conway pleads similarly. (Docket No. 104 at 5). RTI identifies itself as a group of affiliated companies specializing in risk management, insurance brokerage, and financial services. (Docket No. 3 at 3; Docket No. 104 at 5).[8] Plaintiff has not alleged in claims 1-6 that RTI was an insurer on the policies or that a separate contract existed with RTI. Moreover, the policies

---

[7]

Its website provides the same description, stating it's a broker between insurance suppliers and the insurance agencies who represent the policyholder. *See* http://www.conwayes.com (last visited May 4, 2010).

[8]

*See also* http://www.rti-insurance.com/ (last visited April 21, 2010).

do not contain any reference to RTI.  While Plaintiff refers to RTI in his affidavit, he only asserts that RTI sold the insurance policies to him through its employee, Byron Pryor. (Docket No. 128-1 at 2). Given this record, there is no genuine issue of material fact as to whether Conway or RTI is the insurer who issued the subject policies.

Further, Defendants Certain Underwriters at Lloyd's, Advent Underwriting Limited, and Omega Underwriting have filed an Answer to Plaintiff's Amended Complaint, in which these Defendants state that they are the subscribing parties to the policies, pursuant to which Plaintiff submitted claims to them for benefits. (Docket No. 83 at 7-8, 33, 36). They further state in their Answer that they neither accepted nor denied Plaintiff's claims under the policies "existing between the answering party and the plaintiff," and that they have performed all obligations existing under the contracts. (*Id.* at 34). In addition, the Court notes that all of Plaintiff's allegations concerning his interaction with any insurer relate to the actions of Certain Underwriters at Lloyd's. (*See* Docket No. 3; Docket No. 83).

To the extent that Plaintiff argues that Conway and RTI are liable under a breach of contract theory because they are "partners" with the Lloyd's Defendants, the Court finds that said argument likewise fails. Plaintiff did not allege a partnership in his Amended Complaint between either Conway, or RTI, and the Lloyd's Defendants. (Docket No. 3). Indeed, Plaintiff did not plead any type of relationship between these parties.  Instead, he alleged that Conway relayed information to him that the Lloyd's Defendants were parties to the contract. (Docket No. 3 at 4). He further averred that Conway and the Lloyd's Defendants each issued him a policy of insurance. (*Id.* 13-18, 20). Nevertheless, even construing Plaintiff's partnership theory set forth in his brief and affidavit as an amendment to his claims, the Court finds that this theory fails, as Plaintiff has not provided any

11

factual basis for such a proposition. Rather, Plaintiff has made no more than conclusory legal statements to assert that Defendants acted as partners in a conspiracy in their actions towards Plaintiff. (Docket No. 128 at 3-4). Such conclusory statements are insufficient. *W. Penn Allegheny Health Sys. v. UPMC*, Civ. A. No. 09-480, 2009 U.S. Dist. LEXIS 100935, at * 91 (W.D. Pa. Oct. 29, 2009)(citation omitted)(a plaintiff cannot use the term "conspiracy" to "masquerade" legal conclusions as factual averments); *United States ex rel. Barlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 134-35 (W.D. Pa. 2006)(pursuant to Rule 9(b) a civil conspiracy agreement must be pled with specificity).

Plaintiff's claim number 10 does not survive for similar reasons. As this Court previously explained (Docket No. 155 at 24-25), in order for a defendant to be liable under Pennsylvania's bad faith statute, 42 Pa C.S. § 8371, it must be an insurer under the policies at issue. *Nordi v. Keystone Health Plan West, Inc.*, No. 1476 WDA 2008, 2010 Pa. Super. LEXIS 12, at *11 (Pa. Super. Ct. Jan. 22, 2010). Here, the policies explicitly state that they are 100 % effective with Certain Underwriters at Lloyd's, and neither Conway nor RTI are identified as the insurers on the subject policies. (Docket No. 144 at 3, 33). Consequently, in accordance with the Court's prior ruling as to claims numbered 1-6 that Conway and RTI are not the insurers on the subject policies, the Court finds that Conway and RTI cannot be liable for bad faith under Pennsylvania law.

Plaintiff's claim number 11 cannot go forward as well. To be held liable under New York law for breach of the covenant of good faith and fair dealing, a plaintiff must demonstrate that the defendant was a party to the contract at issue. *Wilmington Trust Co. v. Strauss*, 831 N.Y.S.2d 357, at *8-9 (N.Y. 2006). Given that the Court has already ruled that Plaintiff has not demonstrated a contractual relationship with either Conway or RTI, the Court finds that Plaintiff's New York claim

is not viable.

Based on the foregoing, to the extent that Plaintiff's claims numbered 1- 6, and 10-11 are directed at Conway and RTI, they are dismissed, with prejudice.

**B.      "Claim # 8 For Negligence"**[9]

As to Plaintiff's claim for negligence in "Claim # 8," Defendants argue that to the extent that this claim is made against them, it should be dismissed under Rule 12(b)(6). (Docket No. 104 at 6-7). Specifically, Defendants argue that this claim should be dismissed because Plaintiff's Amended Complaint is devoid of any factual allegations that Conway or RTI were involved in the demolition of the building at 140 Aurilles Street. (*Id.*).  In his Response, Plaintiff did not provide any opposition to Defendants' arguments requesting dismissal of "Claim # 8." (Docket No. 128).

To demonstrate a claim under Pennsylvania law for negligence, a claimant must allege enough factual matter showing: (1) a duty of care owed by the defendant, (2) a breach of that duty, (3) a causal connection between the defendant's conduct and the claimant's injury, and (4) actual harm or damage suffered. *Faylor v. Szupper*, Civ. A. No. 08-996, 2010 U.S. Dist. LEXIS 30611, at *35 (W.D. Pa. Mar. 30, 2010)(citing *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)).  Here, the Court construes Plaintiff's cause of action in "Claim # 8" to be directed solely at City of Duquesne, Twin Rivers Council of Government,[10] and W & J Contractors, Inc. (Docket No. 3 at 21-22). Nowhere in said claim does Plaintiff mention Conway or RTI. *Twombly*, 127 S.Ct. at 1965 ("stating

---

[9]

The Court notes that Defendants have not moved for dismissal of "Claim # 7 For Negligence," in which Plaintiff alleges that Defendants owed him a duty in arranging for and recommending appropriate insurance. (Docket No. 3 at 21).

[10]

Steel Valley Council of Government was also named in this claim. Upon a stipulation between this Defendant and Plaintiff, Steel Valley Council of Government was dismissed, with prejudice, on April 23, 2010. (Docket Nos. 153, 154).

... a claim requires a complaint with enough factual matter to suggest the required element."). Therefore, to the extent that this claim is made against Conway or RTI it is dismissed, with prejudice.

**C.    Requests for Relief**

*1.    Punitive Damages*

Defendants next move to strike Plaintiff's request for punitive damages based on alleged breach of contract in claims numbered 1 - 6, arguing they are not recoverable under Pennsylvania law in this context.  (Docket No. 104 at 10).  As to his claims for punitive relief related to Defendants' alleged negligence in claims numbered 7 and 8, Defendants contend that because Plaintiff has not sufficiently pled that they acted outrageously, said request for relief should be dismissed, or in the alternative, stricken. (*Id.* at 11). In response, Plaintiff argues that punitive damages may be awarded in Pennsylvania for tortious conduct that is outrageous, malicious, willful, reckless, or oppressive. (Docket No. 128 at 4). Therefore, he contends, because his Amended Complaint contains such allegations, his request for punitive relief is appropriate. (*Id.*).

Although there is no contractual relationship between Plaintiff and these Defendants, the Court notes that punitive damages are not recoverable under a breach of contract theory in Pennsylvania. *Greenwood Land Co. v. Omnicare, Inc.*, Civ. A. No. 09-686, 2010 U.S. Dist. LEXIS 28327, at  *16-17 (W.D. Pa. Feb. 22, 2010)(citing *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007)(observing that Pennsylvania law typically only provides for punitive damages in tort actions.)). Therefore, to the extent that Plaintiff seeks punitive damages in relation to claims 1-6, this request for relief is dismissed, with prejudice.

Because the Court has already dismissed Plaintiff's cause of action for negligence in claim

14

number 8 against Conway and RTI, his request for punitive relief related thereto is dismissed, with prejudice as to these Defendants.

The Court now turns to Plaintiff's request for punitive damages based on Defendants' alleged negligence as set forth in claim number 7. (Docket No. 3 at 21). Under Pennsylvania law, punitive damages may be awarded for negligent conduct that is outrageous due to the defendant's evil motives or "reckless indifference to others." *Sabric v. Martin*, Civ. A. No. 09-12237, 2010 U.S. Dist. LEXIS 12502, at *17 (M.D. Pa. Feb. 12, 2010)(citing *Burke v. Maassen*, 904 F.2d 178, 181 (3d Cir. 1990)). In *Sabric*, the plaintiff alleged the defendants' conduct was outrageous based on their conscious disregard of six specific incidents averred by the plaintiff. *Sabric*, 2010 U.S. Dist. LEXIS 12502, at *17. The court found that these "specific allegations" were sufficient to make out a claim for punitive damages. *Id.*

Here, in claim number 7, Plaintiff has simply pled that Defendants were "reckless and careless" in breaching their duty to Plaintiff in arranging for and recommending an appropriate insurance policy.[11] (Docket No. 3 at 21). He has not pled any factual detail demonstrating how Defendants' actions were outrageous or reckless.  Thus, in the Court's estimation, Plaintiff has not sufficiently pled a claim for punitive damages for claim number 7 pursuant to *Twombly* and *Iqbal*.

---

[11]

Pennsylvania courts have defined the following standard of care for insurance agents: "[A] licensed insurance agent ... [i]s required to exercise the skill and knowledge normally possessed by members of that profession and his failure to do so render[s] him liable for any loss of coverage." *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131 (Pa. Super. Ct. 2003)(citing Restatement (2d) Torts § 299A (1965)); *see also Stern Family Real Estate P'Ship v. Pharmacists Mut.*, Civ. A. No. 06-130, 2007 U.S. Dist. LEXIS 22296, at *9-18 (W.D. Pa. Mar. 27, 2007)(discussing the context in which a duty to an insured arises on the part of an insurance agent). Similarly, an insurance broker may be held liable for any loss resulting from his negligence in obtaining coverage a reasonably prudent professional would have obtained under the circumstances, "unless the [insured] is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss." *Northwestern Mutual Life Ins. Co. v. Babayan*, Civ. A. Nos. 03-717, 03-1622, 2004 U.S. Dist. LEXIS 17155, at *59-60 (W.D. Pa. Aug. 25, 2004)(quoting *Consol. Sun Ray, Inc. v. Lea*, 401 F.2d 650 (3d Cir. 1968), *cert. denied*, 393 U.S. 1050 (1969)).

15

Therefore, said request for relief as to claim number 7, is dismissed, without prejudice. However, because the Court finds that it would not be futile to permit Plaintiff to amend this claim for relief, *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000), he shall be granted leave to amend his claim number 7 to assert his basis for punitive damage liability.

2.     *Attorney's Fees*

Defendants next argue that Plaintiff's request for attorney's fees should be stricken for several reasons. (Docket No. 104 at 11). First, Defendants contend that such fees are not recoverable for breach of contract unless provided for in the contract itself. (*Id.*). Second, they are unrecoverable based on mere negligence, absent a showing that the conduct at issue was "malicious, wanton, reckless, willful, or oppressive." (*Id.* at 11-12 (citation omitted)). And third, because Plaintiff is proceeding *pro se*, Defendants argue that he would not be entitled to attorney's fees. (*Id.* at 12). In response, Plaintiff argues that attorney's fees are authorized in this case under Pennsylvania and New York law for "bad faith actions." (Docket No. 128 at 5). He further asserts that he "anticipates the involvement of a prominent law firm for at least part of the litigation;" therefore, his request for attorney's fees is proper. (*Id.*).

In light of the fact that the Court has already dismissed Plaintiff's breach of contract, UTPCPL, bad faith, and New York claims against Conway and RTI, to the extent that Plaintiff seeks attorney's fees related to the same, said request is likewise dismissed, with prejudice.

Turning to Plaintiff's attorney's fee demand in claim number 7, as a general rule in Pennsylvania, "a litigant cannot recover counsel fees from an adverse party unless there is express

16

statutory authorization, a clear agreement of the parties, or some other established exception."[12]
*Onzik v. Bor. of Edwardsville*, Civ. A. No. 08-2036, 2009 U.S. Dist. LEXIS 70302, at *13-14 (M.D.
Pa. Aug. 11, 2009)(citing *Synder v. Synder*, 620 A.2d 1133, 1134 (Pa. 1993)). Plaintiff has not pled
any circumstances warranting an award of attorney's fees.  Moreover, as this court has recently
stated, attorney's fees are not available in negligence cases. *Martik Bros., Inc. v. Huntington Nat'l
Bank*, Civ. A. No. 08-83, 2010 U.S. Dist. LEXIS 40250, at *5 (W.D. Pa. Apr. 23, 2010)(citing
*Krysmalski v. Tarasovich*, 622 A.2d 298 (Pa. Super. Ct. 1993); and *Walker v. May Dept. Stores Co.*,
83 F.Supp.2d 525 (E.D. Pa. 2000)). As a result, Plaintiff's demand for attorney's fees related to
claim number 7 against Conway and RTI does not survive.

There is another reason why Plaintiff's request for attorney's fees cannot proceed. Absent
a clear congressional directive, a *pro se* plaintiff cannot be awarded attorney fees. *See e.g.*, *Owens-El
v. Robinson*, 694 F.2d 941, 943 (3d Cir. 1982)("*pro se* non-lawyer litigants cannot be awarded
attorney's fees under" 42 U.S.C. § 1988); *Cunningham v. FBI*, 664 F.2d 383 (3d Cir. 1981)(non-
lawyer *pro se* litigant is not entitled to attorney's fees for services provided to himself under the
Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E)). Therefore, since Plaintiff is not represented
by counsel, and is no longer a licensed attorney, he cannot recover attorney's fees. *See also Aronson
v. Creditrust Corp.*, 7 F.Supp.2d 589, 594 (W.D. Pa. 1998)(*pro se* plaintiff's request for attorney's
fees was stricken by the court pursuant to Rule 12).

As a result of the foregoing, Plaintiff's request for attorney's fees is dismissed, with prejudice

---

[12]

This is commonly referred to as the "American Rule," and according to said rule, attorney's fees are also not
recoverable for a plaintiff's breach of contract claim unless they are provided for in the policies themselves. *Merlino v.
Delaware Cnty.*, 728 A.2d 949, 951 (Pa. 1999). A review of the subject policies in the case *sub judice* reveals that the
policies do not provide for attorney's fees in the event of litigation over a disputed claim for payment. (Docket No. 144).

as to these Defendants.

### E.      Paragraphs 59 - 68 in the Amended Complaint

Finally, Defendants move to strike paragraphs 59 through 68 of Plaintiff's Amended Complaint under Rule 12(f). (Docket Nos. 104 at 12, Docket No. 3 at 11-12). While Defendants acknowledge that they are not named within these paragraphs, they argue that they contain irrelevant allegations that serve no purpose other than to elevate the level of discourse in this litigation. (Docket No. 104 at 12). Because these allegations are irrelevant to Plaintiff's claims, they should be stricken. (*Id.*). Plaintiff argues in response that these allegations are "directly relevant to listed Defendant's [sic] in this Case and the reasons for nonpayment by these Defendants." (Docket No. 128 at 5). The Court does not agree.

"The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Thornton v. UL Enters., LLC*, Civ. A. No. 09-287E, 2010 U.S. Dist. LEXIS 240207, at *5-6 (W.D. Pa. Mar. 16, 2010)(quoting *Adams v. County of Erie, Pa.*, Civ. A. No., 2009 U.S. Dist. LEXIS 108090, at *1 (W.D. Pa. Nov. 19, 2009)(citations omitted)). A court has considerable discretion in resolving a motion to strike under Rule 12(f), and "allegations [that] have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case," they may be stricken. *Natale v. Winthrop Resources Corp.*, Civ. A. No. 07-4686, 2008 U.S. Dist. LEXIS 54358, at *14 (E.D. Pa. July 9, 2008)(citation omitted). Additionally, matters in a complaint that are deemed immaterial or impertinent may be stricken. FED. R. CIV. P. 12(f); *Alston v. Parker*, 363 F.3d 229, 234 n. 7 (3d Cir. 2004). An "immaterial" matter is that which has no essential or important relationship to the claim for relief. *Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F.Supp. 1279 (D. Del. 1995).

18

"Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Cech v. Crescent Hills Coal Co.*, 2002 U.S. Dist. LEXIS 15731 (W.D. Pa. 2002). A "scandalous" matter can either cast a derogatory light on someone, or may also detract from the dignity of the court. *Carone v. Whalen*, 121 F.R.D. 231 (M.D. Pa. 1988).

The challenged allegations consist of statements concerning Defendants Lloyd's TSB Group, Society of Lloyd's, Advent Underwriting Limited, Syndicate 780, and Omega Underwriting Agents Ltd., Syndicate 958. (Docket No. 3 at 11-12).  In general, these averments relate to their financial histories and assets, including bailouts they allegedly received from the British government. (*Id.*). Plaintiff also alleges prior misconduct by these Defendants relating to the mistreatment of customers, encouraging their customers to evade paying taxes, and prior fines that were levied against them. (*Id.* at 12). Additionally, these allegations detail the monetary amounts paid in claims by these Defendants as well the amount of unpaid claims. (*Id.*). In this Court's estimation, these statements are neither relevant to any of Plaintiff's claims for nonpayment under the subject policies nor necessary to establish a cause of action based on the same. Further, the bald allegations concerning the Lloyd's Defendants' financial status or whether they received bailouts are improper. Additionally, these narratives are burdensome as they detail alleged instances of prior misconduct by the Lloyd's Defendants that appear to have nothing to do with the matter at hand. *See Drysdale v. Woerth*, Civ. A. No. 98-3090, 1998 U.S. Dist. LEXIS 18589 (E.D. Pa. Nov. 18, 1998).  As a result, the Court grants Defendants' motion to  strike these allegations.

Accordingly, paragraphs 59-58 in Plaintiff's Amended Complaint on pages 11-12 (Docket No. 3) are stricken, with prejudice.

**VI.    Conclusion**

For the above reasons, Defendants Conway and RTI's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Docket No. 104) is GRANTED, in part, and DENIED, in part. Additionally, Defendants' Motion to Strike (*id.*) is GRANTED, in part, and DENIED, in part. An appropriate order follows.

<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge

Date:          May 5, 2010.
CC/ECF:        All counsel of record.