# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY ALLEGRINO, as assignee of Liberty Immobiliare, Inc., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 09-1507 Judge Nora Barry Fischer |
| CONWAY E & S, INC., et al, ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**I. Introduction**

Before the Court is the Motion to Dismiss filed by Defendant City of Duquesne (hereinafter, "Defendant City").[1] Defendant City seeks dismissal of *pro se* Plaintiff Anthony Allegrino's[2] (hereinafter, "Plaintiff") negligence claim set forth in Plaintiff's Third Amended Complaint (Docket No. [177] paragraphs 167-197). To rule on this motion, the Court must decide whether Plaintiff has alleged a sufficient set of facts to support a plausible claim that Defendant City is liable for damages to Plaintiff's property resulting from Defendant City's participation in the demolition of a building located adjacent to Plaintiff's property. For the reasons set forth below, the motion will be granted, with prejudice.

---

[1] Defendant City of Duquesne is a Pennsylvania Municipal Corporation with its principal place of business in Pennsylvania (Docket No. [3] at ¶ 19).

[2] Plaintiff, Anthony Allegrino, is a domiciliary of the state of California and a resident of the state of New York (Docket No. [3] at ¶ 7). Plaintiff has previously been admitted to the practice of law in the state of California on June 1, 1999; however, on November 9, 2007, the California Supreme Court disbarred the Plaintiff from the practice of law. *Allegrino v. Conway E & S Servs.,* Civ. A. No. 09-1507, 2010 WL 168775, at *1 at n.1 (W.D.Pa. April 26, 2010)(internal quotations omitted).

1

**II. Factual Background**

Because this matter comes to this court on a Rule 12(b)(6) Motion to Dismiss, the factual allegations set forth in Plaintiff's Third Amended Complaint are accepted as true. *Hemi Group, LLC. v. City of N.Y.*, 130 S. Ct. 983, 986-87 (2010)(citing *Leatherman v. Tarrant County Narcotics and Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). The pertinent facts are therefore as follows.

Plaintiff owned property and a building located at 138 Aurilles Street, Duquesne, Pennsylvania. (hereinafter, "Plaintiff's building")(Docket No. [177] at ¶ 168). Defendant City, Defendant Twin Rivers Council of Government (hereinafter, "Twin Rivers") and Defendant W & J Contractors, Inc. (hereinafter, "W&J") were in joint custody and control of a building located at 140 Aurilles Street located immediately adjacent to the Plaintiff's building. (*Id.* at ¶¶ 168, 169, 175).

Defendant City and Defendant Twin Rivers hired Defendant W & J to demolish the building located at 140 Aurilles Street. (*Id.* at ¶ 169). During the summer of 2008 through October 25, 2008, the date of the demolition, Plaintiff witnessed employees of Defendant City participating in activities in preparation for demolition. (*Id.* at ¶ 175). These activities included removing debris and securing the property at 140 Aurilles Street. (*Id.*). During this same time period, Plaintiff also witnessed employees of both Defendant Twin Cities and Defendant W & J performing the same type of preparation activities, i.e. removal of debris and/or securing the property. (*Id.* at ¶ 176, 177). Representatives of Defendant City supervised the demolition (*Id.* at ¶ 179). The demolition was ultimately conducted jointly by these three defendants (*Id.* at ¶ 168).

Additionally, in order to complete the demolition, Defendant W & J removed the

basement and foundation from 140 Aurilles Street. (*Id.* at ¶ 61). The basement and foundation of 140 Aurilles Street had provided lateral support to Plaintiff's building. (*Id.*). The removal of this lateral support seriously damaged the foundation, floors, and walls of Plaintiff's building (*Id.* at ¶ 60).

The damage caused to Plaintiff's building during the demolition was the result of falling debris, a felled tree, a side blow to Plaintiff's building from the falling 140 Aurilles Street structure and/or a side blow from the heavy equipment used to topple that structure (*Id.* at ¶ 180). Plaintiff alleges that these damages were caused by the negligent manner in which the demolition was conducted (*Id.* at ¶ 178).

The specific damages to Plaintiff's building that resulted form the alleged negligence included a broken window caused by falling debris from the demolished building; a partially crushed new aluminum fence caused by a tree that was excavated during the demolition; a side blow to Plaintiff's building that left a streak down the building caused by the use of heavy equipment during the preparation for and execution of the demolition; Plaintiff's building was caused to lean six to ten inches; floors throughout Plaintiff's building were rendered significantly off level; walls were cracked; and lateral support and the foundation of Plaintiff's building were compromised. (*Id. at ¶ 180*).

### III. Procedural History

Plaintiff filed his Complaint on November 10, 2009, against numerous Defendants on several different claims and legal theories and included claims of negligence, bad faith and a

demand for punitive damages against Defendant City.[3] Plaintiff filed an Amended Complaint on November 23, 2009 that retained all the claims against Defendant City from the original Complaint. On December 16, 2009, Defendant City filed a Motion to Dismiss Plaintiff's claim of negligence, his demand for punitive damages and his claim of bad faith. (Docket No. [61]). Plaintiff filed his response on January 5, 2010, and Defendant City replied on January 19, 2010. (Docket Nos.[80] and [91]). The Court granted Defendant City's Motion to Dismiss the claim for bad faith and punitive damages, with prejudice; however, Defendant's Motion to Dismiss the negligence claim was granted, without prejudice, and the Plaintiff was granted leave to amend his Complaint on the claim of negligence. (Docket No. [166]).

Plaintiff filed his Second Amended Complaint on June 1, 2010 (Docket No. [171]) but the Second Amended Complaint was stricken for failing to comply with Fed. R. Civ. P. 10(a) without prejudice to Plaintiff to correct the deficiency (Docket No. [176]). Plaintiff then filed a Third Amended Complaint on June 11, 2010 (Docket No. [179]). The Third Amended Complaint contains the claim of negligence against Defendant City that is the subject of its Motion to Dismiss.

On June 25, 2010, Defendant City filed the instant Motion to Dismiss the Plaintiff's

---

[3] The following parties were named in the original complaint as parties: Associates of Risk Transfer, Inc., Raphael & Associates, Champion Claim Service, Inc., W & J Contractors, Inc., Steel Valley Council of Government, Twin Rivers Council of Government, Conway E & S, Inc., Advent Underwriting Limited, Omega Underwriting Agents, Ltd., Society of Lloyds, Lloyds TBS Group, & the City of Duquesne. (Docket No.[1]). Raphael & Associates is no longer a party to the suit at-hand because they were not named as a party in the Plaintiff's First Amended Complaint (Docket No. [3]). *Allegrino v. Conway E & S Serv.,* Civ. A. No. 09-1507, 2010 WL 1687558 at *5 (W.D.Pa. April 26, 2010). On April 23, 2010, Plaintiff and Defendant Steel Valley Council of Government filed a stipulation for dismissal of Plaintiff's claims against this Defendant. (Docket No. [153]). Consequently, that Defendant was dismissed, with prejudice. (Docket No. [154]). On April 26, 2010, Defendant Champion Claim Service's motion to dismiss all claims against it was granted, with prejudice. (Docket No. [156]). Defendant Society of Lloyds was terminated as a party to the litigation on April 27, 2010. (Docket No. [159]). The Defendant Lloyds TSB Group was also terminated as a party on April 27, 2010. (Docket No. [160])

4

Third Amended Complaint (Docket No. [191]) asserting that Plaintiff had failed to plead facts sufficient to set forth a plausible claim for which relief can be granted. Plaintiff filed his response to the motion (Docket No. [208]) and Defendant City replied (Docket No. [218]). Oral argument was held on July 29, 2010. The issue of whether Plaintiff has sufficiently pled a plausible negligence claim against the Defendant City is now ripe for decision.

**IV. Standard of Review**

To survive a Rule 12(b)(6) Motion to Dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a 'claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2008)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), Fed. R. Civ. Pro. Rule 12(b)(6); *See also* Fed. R. Civ. P. Rule 8(a)(2) (a valid complaint requires only a "short plain statement of the claim showing entitlement to relief."), *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Supreme Court of the United States in *Iqbal* held that a district court must accept all factual allegations as true, but does not have to use the same standard for legal conclusions. Therefore, the pleading must include factual allegations to support the asserted legal conclusions. *Iqbal*, 129 S.Ct. at 1949, 1953.

The determination of whether a complaint contains sufficient facts to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common-sense." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). The United States Court of Appeals for the Third Circuit has held that in order to make a ruling on a Rule 12(b)(6) motion, a district court should first separate alleged facts from stated legal conclusions. *Fowler*, 578 F.3d at 210-11. The court must then determine whether the alleged facts, if accepted as true, are enough to state a plausible claim for relief. *Id.*

However, in the Third Circuit, a *pro se* complaint should be construed liberally and a less stringent standard should be applied to the complaint. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002). Nevertheless, *pro se* attorneys, including *pro se* dis-barred attorneys, "cannot use the same special considerations granted to a customary *pro se* plaintiff." *Allegrino v. Conway E & S Serv.*, 2010 WL 1687558, at * 6 (citing *Holtz v. Rockefeller & Co.*, 258 F. 2d 62, 82 at n.4 (2d Cir. 2001)(internal quotations omitted)).

## V. Analysis

Defendant City moves to dismiss Plaintiff's negligence claim pursuant to Fed. R. Civ. P. 12(b)(6) because the Third Amended Complaint fails to state a claim on which relief can be granted. Defendant City first argues that the facts alleged do not identify any conduct of the Defendant City that caused the damage to Plaintiff's building and so does not set forth a legal theory that entitles Plaintiff to recover from Defendant City. Second, Defendant City argues that it is immune from liability pursuant to the Political Subdivision Tort Claims Act 42 Pa.C.S.A. § 8541 *et seq.* (hereinafter "Tort Claims Act") and Plaintiff has alleged no facts that place the claim against Defendant City within one of the eight enumerated exceptions to its immunity. These arguments will be addressed in the order in which they were asserted.

### A. Insufficient Factual Averments.

Defendant City argues Plaintiff has not alleged how damage to his building was caused by acts of Defendant City or any of Defendant City's employees. Defendant City thus argues that the Third Amended Complaint fails to plead sufficient facts to state a claim of negligence (or any other legal theory entitling him to recovery from Defendant City).

In order for Plaintiff to plead a claim under a negligence theory in the Commonwealth of

Pennsylvania, facts supporting four elements must be alleged: (1) a duty recognized by the law requiring the actor to conform to a certain standard of conduct, (2) failure by the actor to observe this standard, (3) causation between the conduct and injury, and (4) actual damages must be present. *Tomko v. Marks*, 602 A.2d 890, 892 (Pa. Super. Ct. 1992).

Plaintiff's Third Amended Complaint alleges facts that plausibly support each element. Plaintiff alleges that the Defendant City owed the Plaintiff a duty of care for two reasons. First, Plaintiff alleges that Defendant City had control of the 140 Aurilles Street property, and so was required to maintain the property in such a way that no loss of lateral support caused damage to adjacent property. *See Diksajtsk v. Brosz*, 158 A.2d 620 (Pa. Super. Ct.1932). Second, Plaintiff alleges that Defendant City supervised and participated in the activities of demolition that caused damage to Plaintiff's building. Defendant City is thus alleged to have had a duty to take reasonable steps to assure the demolition did not harm Plaintiff's property. Plaintiff alleges that the Defendant City violated these duties when it allowed the lateral support to be removed and failed to assure steps were taken during the demolition that would have prevented trees, debris and heavy equipment from harming Plaintiff's building. Plaintiff further alleges that the demolition and the removal of lateral support caused actual damage to Plaintiff's building. For these reasons, the Court holds that Plaintiff's Complaint does set forth sufficient facts to state a plausible claim for negligence against Defendant City. The question then becomes whether Plaintiff's claim is barred by immunity as asserted by Defendant City.

### B. Political Subdivision Tort Claims Act Immunity

Defendant City next argues that it is entitled to immunity from Plaintiff's negligence

claim pursuant to the Tort Claims Act. Under the Tort Claims Act, "no local agency[4] shall be liable for any damages on account of an injury to a person or property caused by any act of the local agency or any employee thereof [,]" unless the action falls under one of eight enumerated exceptions to immunity. 42 Pa.C.S.§ 8541 *et seq*. These enumerated exceptions provide for potential liability if the following conditions are met: (1) the damages alleged are otherwise recoverable under common law or statute; (2) an injury was caused by a negligent act of a local agency or employee acting within the scope of his official duties; and (3) the negligent act of local agency falls within one of the eight enumerated categories. 42 Pa.C.S. § 8542; *Repko v. Chichester Sch. Dist.*, 904 A.2d 1036, 1040 (Pa. Commw. Ct. 2006). Because the legislative intent of the Tort Claims Act is to insulate political subdivisions from liability, the exceptions to immunity are to be interpreted narrowly. *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (Pa. 1987); *See also Love v. City of Phila.*, 528 A.2d 531, 532 (Pa. 1988).

In this case, damages caused to property resulting from the negligence of another are recoverable under common law. As determined in the previous section of this opinion, Plaintiff has alleged sufficient facts to assert a claim that Defendant City, a local agency, was negligent. Accordingly, the first two requirements of *Repko* have been satisfied. The Court must now turn to the question of whether the alleged conduct of Defendant City falls within one of the eight enumerated exceptions to its Tort Claims Act immunity. The only possible exception applicable

---

[4] The Plaintiff does not dispute that the Defendant City is a local agency under the Tort Claims Act (Docket Nos. [3],[177],[208]). A two prong test exists to determine if an entity is a "local agency" for the purposes of the Tort Claims Act. *Snead v. Soc'y for Prevention of Cruelty to Animals of Pa.*, 985 A.2d 909, 914 (Pa. 2009). First, the entity must meet the statutory definition of a "local agency." *Id.* The statute defines a local agency as a "government unit other than the Commonwealth government." 42 Pa. C.S. § 8501, *Id.* Second, the court must consider the purpose of the Tort Claims Act. *Snead,* 985 A.2d at 914. The legislative intent of the Tort Claims Act is to insulate political subdivisions from liability. *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (Pa. 1987). The Defendant City meets both prongs of this test.

here is the "real property exception" set forth at 42 Pa.C.S.A. § 8542(3) which provides:

> ***(b) Acts which may impose liability.--****The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:*
>
> *...*
>
> *(3) Real property.--The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:*
>
> *(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;*
>
> *(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;*
>
> *(iii) streets; or*
>
> *(iv) sidewalks.*

However, this "real property exception" can only be applied to cases where it is alleged that a "defect of the land *itself* caused an injury." *Mascaro*, 523 A.2d at 1123, 1124 (emphasis in original), *see also Kiley v. City of Philadelphia,* 645 A.2d 184 (Pa. 1994); *Snyder v. Harmon*, 562 A.2d 307 (Pa. 1989). If the injury is caused by the acts of persons *on* that property, such acts are outside the scope of the real property exception. *Mascaro,* 523 A.2d at 1124. In this case the damage allegedly caused to Plaintiff's building was not the result of any defect in the land under care, custody or control of Defendant City, but by the conduct of individual persons on the land itself. Under these circumstances, the real property exception does not apply and Defendant City retains its immunity from the claims of negligence in this case. *See Van Der Leer v. City of Phila.*, Civ. A. No. 03-4324, 2004 WL 1336315, at *4 (E.D.Pa. June 15, 2004).

Moreover, the Court does not find that Defendant City had "possession" of the property at

9

the time of the alleged negligence. "Possession" for purposes of the real property exception means "total control over premises" for more than a limited amount of time. 42 Pa. C.S. § 8542(b)(3), *City of Pittsburgh v. Estate of Stahlman,* 677 A.2d 384, 387 (Pa. Commw. Ct. 1996); *see also Alvarez v. City of Phila*, Civ. A. No. 03-183, 2003 WL 22595204 at * 3 (E.D.Pa. October 29, 2003). Any type of limited control, or occupation of the premises for a limited period of time, is insufficient to impose liability on the governmental body. *See Estate of Stahlman,* 677 A.2d at 386-387; *Alvarez*, 2003 WL 22595204, at *3. Defendant City had only limited control over the property because of its joint custody and control of the 140 Aurilles Street premises with Defendant Twin Rivers and Defendant W & J Contractors. This limited amount of control does not meet the required "total control" to deem the 140 Aurilles Street property "possessed" by Defendant City, which is necessary for the real property exception to apply.

Lastly, no exception to the Tort Claims Act is applicable because Defendant City merely supervised the demolition that was conducted by third parties. The Tort Claim Act exceptions only apply when the negligent act is performed by an employee of the local agency. *Nardo v. City of Philadelphia*, 988 A.2d 740, 745-746 ( (Pa. Commw. Ct. 2010). The exception does not apply when the negligent act is performed by a third party even when supervised by an employee of the local agency. *Moles v. Borough of Norristown*, 780 A.2d 787, 791 (Pa. Commw. Ct. 2001). Here Plaintiff alleges merely that Defendant City supervised the demolition and no specific allegations are made that a city employee participated in the actual destruction of the building. Accordingly, no exception to immunity applies.

For the forgoing reasons, the Court concludes that Defendant City is immune from Plaintiff's claims and therefore, Plaintiff has failed to plead a claim on which relief can be

granted.

## VI. Conclusion

For the reasons stated above, Plaintiff's claims against Defendant City are dismissed with prejudice. An appropriate Order follows.

*s/ Nora Barry Fischer*  
Nora Barry Fischer  
United States District Judge

Date: August 12, 2010.

CC/ECF: All counsel of record.