**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTHONY ALLEGRINO, as assignee of Liberty Immobiliare, Inc., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 09-1507 ) Judge Nora Barry Fischer |
| CONWAY E & S, INC., et al, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I.        Introduction

Presently before the Court is a motion to dismiss/motion to strike filed by Defendants

Conway E & S, Inc. ("Conway") [1] and Associates of Risk Transfer, Inc., doing business as RTI

Insurance Services[2] ("RTI," collectively "Defendants").   (Docket No. 193).  Defendants seek

dismissal of *pro se* Plaintiff Anthony Allegrino's[3] ("Plaintiff") negligence claims against them and

further seek to strike his request for punitive damages and other of his allegations which they claim

---

[1]

Conway is an independent brokerage firm that functions as a wholesale insurance broker between suppliers of insurance and the insurance agencies who represent the policyholder. *See* http://www.conwayes.com/about.htm (last visited 9/30/10).

[2]

RTI is a group of affiliated companies specializing in risk management, insurance brokerage, and financial services. (Docket No. 3 at 3); *see* http://www.rti-insurance.com/ (last visited 9/30/10). It is comprised of RTI Insurance Services of Pennsylvania, RTI Insurance Services of Florida, and Three Rivers Financial Services.  *Id*.

[3]  Plaintiff, Anthony Allegrino, is a domiciliary of the state of California and a resident of the state of New York (Docket No. [3] at ¶ 7). Plaintiff has previously been admitted to the practice of law in the state of California on June 1, 1999; however, on November 9, 2007, the California Supreme Court disbarred the Plaintiff from the practice of law. *Allegrino v. Conway E & S Servs.,* Civ. A. No. 09-1507, 2010 WL 168775, at *1 at n.1 (W.D.Pa. April 26, 2010)(internal quotations omitted).

were either previously struck by the Court or are impertinent.[4]  (*Id.*).  In a prior Memorandum Opinion, the Court addressed similar motions brought by Defendants, dismissing several claims against these entities, but granted Plaintiff leave to amend his request for punitive damages. *See Allegrino v. Conway E & S, Inc. et al.*, Civ. A. No. 09-1507, 2010 WL 1854125, 2010 U.S. Dist. LEXIS 40732 (W.D. Pa. May 5, 2010); (Docket No. 163).  Plaintiff filed his Third Amended Complaint and this challenge followed.  For the reasons set forth below, Defendants' Motion is granted, in part, and denied, in part.[5]

## II.    Relevant Factual Background[6]

Because this matter comes to this court on a Rule 12(b)(6) Motion to Dismiss, the factual allegations set forth in Plaintiff's Third Amended Complaint are accepted as true. *Hemi Group, LLC. v. City of N.Y.*, --- U.S. ---, 130 S. Ct. 983, 986-87 (2010)(citing *Leatherman v. Tarrant County Narcotics and Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). The pertinent facts are as follows.

### A.    *The Property and the Purchase of the Insurance Policies*

Plaintiff[7] owns real property and a building at 138 Aurilles Street, Duquesne, Pennsylvania.

---

4

The Court notes that Defendants' initial motion only requests dismissal of the negligence claim against Conway, but, at the motion hearing, defense counsel advocated for dismissal of the negligence claims against both Conway and RTI.  *See Transcript of Motion Hearing of July 29, 2010* ("*Trans. Hr'g 7/29/10*") at 38-46.  The Court discusses all of the parties' arguments below.

5

To the extent that Defendants' motions request that paragraphs 73-77 of the Third Amended Complaint, said motion is denied, as moot, the Court having entered an order striking those paragraphs on August 12, 2010. (Docket No. 226).

6

The Court notes that Plaintiff incorporates by reference paragraphs 6-8, 9-11, and 18-77 into Claim 7.

7

The owner of the subject rental investment property, a multi-unit apartment building, is Liberty Immobiliare, Inc.  Plaintiff is the primary stockholder and president of Liberty Immobiliare, Inc.

The property was covered under an insurance policy issued by Defendants Certain Underwriters at Lloyd's, Advent Underwriting Limited, a/k/a Lloyd's Syndicate 780, and Omega Underwriting Agents Ltd., a/k/a Lloyd's Syndicate 958 ("Underwriters"), Policy Number CONW-51534-07, which insured the real property from May 9, 2007 to May 9, 2008.[8] (Docket No. 177-1, Exhibit "A"). He was also issued a vacancy permit for this period because the building was under construction and no one was onsite on a regular basis. (Docket No. 177 at ¶ 32). Plaintiff contends that prior to the issuance of said policy, Defendants RTI, Underwriters and Conway, conducted a pre-inspection of the property and charged Plaintiff a fee for the inspection. (Docket No. 177 at ¶ 23).

Plaintiff alleges that he had contacts with Byron Pryor, an agent of RTI, in April of 2008 regarding the insurance coverage for the property, building and his businesses. (Docket No. 177 at ¶¶ 143-146). Plaintiff avers that he requested that Pryor procure insurance on his behalf to protect the business property for the business activities that he intended to operate at that location including an "internet search engine" and "jeans manufacturing." (*Id*. at ¶¶ 143, 144). He also requested "director and officer liability" coverage and "general insurance coverage for liability and property coverage." (*Id*. at ¶¶ 145, 146). Plaintiff then purchased another policy from Underwriters, policy number CONW-51636-08, which provided insurance from May 9, 2008 to May 9, 2009. (Docket No. 177-2, Exhibit "B"). Plaintiff claims that despite his requests to Pryor and RTI, the requested coverage for his "internet search engine" and "jeans manufacturing" business activities and related business property, for "director and officer liability," and for "general insurance coverage for liability and property coverage" were not included in said policy. (Docket No. 177 at ¶¶ 143-146). Plaintiff

---

[8]
Liberty is the policyholder, but on November 10, 2009, Plaintiff took by assignment from Liberty any and all outstanding and unresolved claims made on the policies. (Docket No. 177 at ¶¶ 7, 8, 25).

further alleges that he made several requests for a copy of his policies, including in April and June of 2008, but that they were not produced by RTI until October of 2008. (*Id*. at ¶ 158).

From April 2007 to November 2008, Plaintiff made substantial renovations to the building, installing new electric service and copper plumbing service to three of the apartments, at a cost of approximately $130,000. (Docket No. 177 at ¶ 24). He also stored some equipment related to the aforementioned businesses in the building.

B.     *Damage to the Building and Plaintiff's Business Property*

Plaintiff claims that the building and his property contained in the building were damaged by separate instances of vandalism, windstorms and when a demolition team tore down an adjacent property.

Plaintiff asserts that he incurred multiple losses caused by vandalism to the real property at 138 Aurilles Street. (*Id.* at ¶¶ 28, 29). The first instance of vandalism occurred between November 7, 2007 and April 10, 2008. (*Id.* at ¶ 28). In November 2007, the subject property was allegedly flooded by Plaintiff's former contractor. (*Id.*). Specifically, the contractor intentionally smashed a toilet in one of the upstairs apartments, which caused the building to flood with 51,400 gallons of water. (*Id.* at ¶¶ 30, 31). Plaintiff avers that the contractor was upset after he was fired by Plaintiff over a financial dispute and work issue between them. (*Id.* at ¶¶ 30, 31). Plaintiff alleges he promptly reported the vandalism claims. (*Id.*). A second instance of vandalism allegedly occurred between May 23, 2008 and August 18, 2008. (*Id.* at ¶ 28). In addition to the damage to the building, Plaintiff alleges that certain of his electronic business personal property was damaged by this vandalism.

Plaintiff also maintains that he incurred losses related to damage to his property caused by

two windstorms, on July 20 and 22, 2008, respectively. (*Id*. at ¶¶ 44, 45). As a result of the windstorms, all of the gutters were "blown off" the building. (*Id.* at ¶ 46). The storm also caused other structural and non-structural damage. (*Id*.).

On or about October 25, 2008, the property adjacent to 138 Aurilles Street, at building number 140, was demolished by the City of Duquesne, W & J Contractors and Twin Rivers Council of Government, through the use of heavy machinery and vehicles. (*Id*. at ¶ 59). Specifically, Plaintiff attests that these entities used heavy equipment to destroy the basement and foundation on the neighboring property, thereby removing lateral support to Plaintiff's building. (*Id.* at ¶ 61). Plaintiff avers that this demolition seriously damaged the foundation, floors, and walls of Plaintiff's building. (*Id*. at ¶ 60). Consequently, Plaintiff alleges that these entities were negligent.[9] (*Id.* at ¶ 61).

Finally, on October 12, 2009, certain of Plaintiff's electronic business personal property that was damaged by the alleged vandalism was moved from 138 Aurilles Street to 359 Broadway, Newburgh, New York for storage. (*Id*. at ¶ 55). This property was subsequently discarded by a worker at the new location. (*Id*. at ¶ 54).

C.    *Plaintiff's Insurance Claims*

Plaintiff submitted insurance claims to Underwriters, Conway and RTI on August 18, 2008. (Docket No. 177 at ¶ 42). Byron Pryor of RTI assisted with the claims. (*Id*. at ¶¶ 149-151, 156). Plaintiff advised Pryor that the damage was the result of a "windstorm" and Plaintiff submitted a claim with his insurance company alleging losses caused by windstorm damage. (*Id*. at ¶ 149). At that time, Pryor informed Plaintiff that Underwriters would investigate the cause of the losses at a

---

[9]

All of Plaintiff's claims against the City of Duquesne have been dismissed from this case, with prejudice. (Docket No. 224). Twin Rivers Council of Government and W & J Contractors, Inc. filed Answers to Plaintiff's Third Amended Complaint. (Docket Nos. 185, 186).

later date. (*Id*. at ¶¶ 150, 151). In October of 2008, Pryor allegedly told Plaintiff that RTI "would review Plaintiff's policy completely and determine if any payment was due and what would be the covered causes of loss and appeals process and advise Plaintiff accordingly," but that little to no action was ever taken. (*Id*. at ¶ 156). Subsequently, Plaintiff determined that his true losses were the result of vandalism. (*Id*. at ¶¶ 152, 154). He reported this to Pryor in November of 2008, who informed him that Underwriters would likely deny the claim as untimely. (*Id*.). Plaintiff then made a new claim to Underwriters in November of 2008, claiming loss as a result of vandalism. (*Id*. at ¶ 154). Underwriters classified this claim as "late." (*Id*. at ¶ 152). But, this claim has yet to be adjusted. (*Id*. at ¶¶ 41, 62).

Plaintiff reported a potential insurance claim to RTI on or about December, 2008 as a result of the damage to his property resulting from the demolition of the adjacent building. (*Id*. at ¶ 153). He alleges that RTI did not report or timely file an insurance claim with Lloyds/Underwriters. (*Id*.). However, he also avers that he filed a claim for this damage with Underwriters, RTI and Conway on December 8, 2008. (*Id*. at ¶ 56). Similarly, this claim has yet to be adjusted. (*Id*. at ¶ 63).

Regarding the inadvertent disposal of the electronic business personal property, Plaintiff filed a report with Underwriters, RTI and Conway on November 10, 2009. (*Id*. at ¶ 55). Like his other claims, this claim has not been adjusted. (*Id*. at ¶ 63).

    D.    *Information Provided to Underwriters, RTI and Conway Regarding the Claims*

In addition to the aforementioned claims, Plaintiff also submitted certain information supporting his claims at various times. On September 4 and 5, 2008, Plaintiff submitted estimates of itemized damages regarding the instances of vandalism and windstorm losses to Underwriters, RTI and Conway. (*Id*. at ¶¶ 37, 38, 48, 49). He filed a police report with the City of Duquesne on

October 25, 2008, identifying Ernesto Avilles Sanchez as the individual who vandalized the property and then provided Underwriters, RTI and Conway with this information. (*Id*. at ¶¶ 34, 35). Later, on November 6, 2008, Plaintiff provided the instant Defendants with an engineering report related to his claim for windstorm damages, which verified the occurrence of the storms and the related wind speeds. (*Id*. at ¶ 47).

In conjunction with his demolition claim, Plaintiff submitted an engineering report itemizing the damage. (*Id*. at ¶ 62).

E.    *Investigation of Plaintiff's Insurance Claims*

Plaintiff claims that no investigation has been conducted by Underwriters, RTI or Conway to determine the cause of his losses. (*Id*. at ¶ 52). However, he asserts that a number of investigatory acts have been undertaken by these Defendants. He avers that the instant Defendants intentionally sent a roofer, instead of a licensed engineer, to examine the building for structural damage. (*Id*. at ¶¶ 51, 72). He complains that they did so without notifying him and that the roofer examined only the sides of the building that had no damage. (*Id*. at ¶¶ 51, 72). Plaintiff further alleges that his damaged electronic business personal property was inspected by these Defendants prior to him moving the property to New York. (*Id*. at ¶ 54). Finally, Plaintiff admits that he was subject to an examination under oath regarding his claims by Underwriters on May 7, 2009. (*Id*. at ¶ 66).

F.    *Additional Communications Between Plaintiff and RTI/Conway*

Plaintiff had certain communications with Pryor at RTI in November of 2008. During these conversations, Pryor allegedly told Plaintiff that claim payout rates were an important factor that brokers had to monitor and consider when evaluating claims, that Lloyds probably sent an incompetent adjuster to evaluate Plaintiff's damages based on availability, and that he agreed with

Plaintiff's comment to him that "Lloyds does not pay." (*Id*. at ¶¶ 159, 160). Plaintiff asserts that these comments show a lack of good faith on the part of RTI in procuring insurance from Underwriters and in processing his insurance claims. (*Id*.).

As to Conway, Plaintiff alleges that it did not correctly process his August 18, 2008 claim because he left messages for Charles Conway on that date, which were not returned. (*Id*. at ¶ 163). In addition, on or about November 2009, Plaintiff had a conversation with Charles Conway during which Conway provided him with some information regarding his insurance claims but did not comment further, except for stating that Plaintiff's insurance claims were out of his firm's hands. (*Id*. at ¶ 164).

G.     *Present Status of Plaintiff's Claims and his Property*

As of June 10, 2010, Plaintiff's insurance claims have not been adjusted.[10] (Docket No. 177 at 41, 62). He maintains that the building has remained vacant and water soaked for nearly two years. (*Id*. at ¶ 69). This has caused mold and deterioration in the building and Plaintiff has lost rents/profits due to the vacancy necessitated by the building's condition. (*Id*.). He also claims that he has lost further investments in his property and businesses. (*Id*. at ¶ 68).

## III.    Relevant Procedural History

This Court issued its Memorandum Opinion regarding earlier motions to dismiss/strike by the instant Defendants on May 5, 2010. (Docket No. 163). After some difficulty, Plaintiff filed his Third Amended Complaint on June 11, 2010. (Docket No. 177). The present Defendants filed their motion to dismiss/motion to strike and brief in support on June 25, 2010. (Docket Nos. 193, 194).

---

[10]

To the extent that Plaintiff characterizes Defendants' handling of his claims as being "adjudicated," the Court construes these references as intending to mean "adjusted."

Plaintiff filed his response to said motion, including an attached "affidavit," on July 15, 2010. (Docket No. 209). Defendants filed their reply brief on July 21, 2010. (Docket No. 214). A motion hearing was then held on July 29, 2010 and the transcript was ordered. (Docket No. 221). No further briefing was ordered and the motions are ripe for disposition given the Court's review of the transcript of the hearing.[11]

## IV. Standards for Reviewing Rule 12(b)(6) Motions and Matters Outside the Pleadings

### A. *Rule 12(b)(6) Standard*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and FED. R. CIV. P. 8(a)(2)(a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief."). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The Court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The determination of whether a

---

[11] The Court notes that the transcript was received on September 16, 2010.

complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "plausible claim for relief."). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

When reviewing a *pro se* complaint, a court must use a less stringent standard than if the complaint had been drafted by counsel and must construe a *pro se* complaint liberally. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)(quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)); *see also Wishnefsky v. Salameh*, Civ. A. No. 08-128J, 2009 U.S. Dist. LEXIS 124600, at *9 (W.D. Pa. Dec. 22, 2009). *Pro se* attorneys – or in Plaintiff's case, a *pro se* disbarred attorney – "typically 'cannot claim the special consideration which the courts customarily grant to *pro se* parties.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d.Cir. 2001)(quoting *Harbulak v. Cnty. of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)), *accord, e.g., Glatzer v. Barone*, 614 F.Supp.2d 450, 451 n.1 (S.D.N.Y. 2009); *see also Taylor v. Alvarez*, Civ. A. No. 07-23003, 2008 U.S. Dist. LEXIS 108847, at *1 n.2 (S.D. Fla. Apr. 21, 2008).

B.      *Consideration of Matters Outside the Pleadings*

At the motion to dismiss stage, a court may generally only consider documents attached to a complaint without converting the motion into a motion for summary judgment. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). But, in evaluating a Rule

12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records ... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7, 2008 WL 2779079 (W.D. Pa. July 15, 2008)(citing *Pension Benefit*, 998 F.2d at 1196)).

With his Response to Defendants' motion, Plaintiff submitted his own affidavit. (Docket No. 209). Defendants have objected to the Court's consideration of this affidavit in adjudicating the present motions. (Docket No. 214). In resolving a Rule 12(b)(6) motion, this Court is not permitted to consider an affidavit of one of the parties without converting the motion to a motion for summary judgment. *Greer v. Smith*, 59 Fed. Appx. 491, 492 (3d Cir. 2003)(not precedential)(citing *Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000)(affidavits filed in opposition to a motion to dismiss "clearly comprise [] a matter outside the pleadings."). Accordingly, the Court will not consider Plaintiff's affidavit in its decision on the present motion.

## V. Discussion

### A. *Plaintiff's Negligence Claims*

A federal court sitting in diversity must apply the substantive law as decided by the state's highest court. *Travelers Indem Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997)(citations omitted). The parties here do not dispute the application of Pennsylvania law to this matter; therefore, Pennsylvania law will be applied. *See Compagnie des Bauxites v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 689-91 (3d Cir. 1989).

To demonstrate a claim under Pennsylvania law for negligence, a plaintiff must allege enough factual matter showing: (1) a duty of care owed by the defendant, (2) a breach of that duty,

(3) a causal connection between the defendant's conduct and the claimant's injury, and (4) actual harm or damage suffered. *Faylor v. Szupper*, Civ. A. No. 08-996, 2010 U.S. Dist. LEXIS 30611, at *35, 2010 WL 1257467 (W.D. Pa. Mar. 30, 2010)(citing *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)).

Defendants contend that Plaintiff has failed to sufficiently allege either RTI or Conway owed a duty to him or, if such a duty is present, Plaintiff has failed to sufficiently allege that he has suffered harm or actual damage as a result of any breach of those duties. (Docket No. 194). Each seeks dismissal of the negligence claim against it.[12] Plaintiff maintains that he has alleged sufficient facts to state a claim upon which relief may be granted. (Docket No. 209).

Plaintiff has similarly alleged that each of these Defendants "owed Plaintiff a duty of care in arranging for and recommending an appropriate insurance policy and appropriate coverage to protect Plaintiff's business interests and in processing Claims referenced in this Amended Complaint." (Docket No. 177 at ¶¶ 138, 140). Under *Iqbal* and *Twombly*, these averments are legal conclusions which this Court will not credit when evaluating Plaintiff's allegations and Defendants' motions to dismiss. *See Fowler*, 578 F.3d at 210-11. Thus, the Court must determine if a duty was owed to Plaintiff from the non-conclusory allegations in Plaintiff's Third Amended Complaint.

In order to ascertain whether any duty exists, the Court's first inquiry is to determine the relationships between the parties.[13] The Court has previously discussed the relationship between

---

12

*See* n. 4, *supra*.

13

"Courts are to balance several factors in determining whether a duty exists: "'(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.'" *Star Spa Services, Inc. v. Robert G. Turano Ins. Agency, Inc.*, 595 F.Supp.2d 519, 527 (M.D.Pa. 2009)(quoting *Althaus v. Cohen*, 562 Pa. 547, 756 A.2d 1166, 1169 (2000)).

Plaintiff and these two entities in the context of the insurance purchased by Plaintiff from Underwriters.[14] Based on Plaintiff's allegations, RTI acted as an insurance broker, which is "a middle man between the insured and the insurance company." *Rich Maid Kitchens, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 641 F.Supp. 297, 303 (E.D. Pa. 1986) (citing 3 COUCH ON INS. 2d § 25:93-94 (1984)), *aff'd* 833 F.2d 307 (3d Cir. 1987). "The general rule in Pennsylvania is that the insurance broker is an agent of the insured." *Comcast Spectator L.P. v. Chubb & Son, Inc.*, 2006 U.S. Dist. LEXIS 55226, at *37, 2006 WL 2302686 (E.D.Pa. 2006); *see also* 3 COUCH ON INS. § 45:1 ("[a] representative of the insured is known as an 'insurance broker.'").[15] An insurance broker solicits, procures and places insurance. *Comcast*, 2006 U.S.Dist.LEXIS 55226, at *59. Meanwhile, as evidenced by the policies and Plaintiff's allegations, Conway acted as an insurance agent on behalf of Underwriters. 3 COUCH ON INS. § 45:1 ("an 'insurance agent' represents an insurer under an exclusive employment agreement by the insurance company.").[16] Neither of these entities are

---

14

The Court understands that generally the question of whether a person or entity is an insurance agent or an insurance broker may be a question of fact for resolution by a jury at trial. *See Rich Maid Kitchens*, 641 F.Supp. at 304. And, an insurance broker may also be a dual agent; both an agent of the insured and the insurer. *See Comcast*, 2006 U.S.Dist.LEXIS 55226, at *38. However, the allegations in the Second Amended Complaint, and the policies themselves, support a finding that RTI acted only as an insurance broker, while Conway acted as an insurance agent for the insurance carrier in the transactions in this case. Therefore, RTI and not Conway possibly owed Plaintiff a duty.

15

Title 31, Insurance, of the Pennsylvania Administrative Code defines "broker" as "[a] person, partnership or corporation, not an officer nor appointed as an agent of an entity, who, for compensation, acts or aids in obtaining insurance for a person other than oneself." 31 PA.CODE § 37.1. Of course, Byron Pryor acted as a broker as well, through his actions as an employee of RTI.

16

Title 31, Insurance, of the Pennsylvania Administrative Code defines "agent," in relevant part, as:
    (i) Inclusions. Means one or more of the following:
        (A) A person authorized in writing by an entity to do one of the following:
            (I) Solicit risks and collect premiums and to issue or countersign policies in its behalf.
            (II) Solicit risks and collect premiums in its behalf.

insurers or acted as an insurance company in relation to the transactions in dispute. Thus, they cannot "issue" coverage as Plaintiff alleges.[17]  *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513, 519 (3d Cir. 2009)("insurance companies issue policies under which the insurer assumes certain risks in exchange for premiums that the policyholders pay."). Instead, these entities acted as intermediaries to facilitate the purchase of insurance by Plaintiff, through Liberty, from Underwriters. In addition, RTI may have had a role in submitting claim documents to Underwriters.

In sum, the duties owed by RTI and Conway to Plaintiff, if any, must be determined from the relationships between the parties and the Court will analyze the duties owed by RTI, as an insurance broker, and by Conway, as an insurance agent. As noted, Plaintiff argues that these entities owed him a duty to recommend appropriate coverage, arrange and procure appropriate coverage, and to properly process his claims. (Docket No. 177 at ¶¶ 138, 140).

1.    Negligence Claim against RTI

With respect to Plaintiff's claims against RTI, "for ordinary negligence purposes, the

---

(B) A person, not a licensed insurance broker, who, whether or not for compensation does one of the following:
    (I) Solicits insurance on behalf of an entity.
    (II) Transmits for a person other than himself an application for a policy of insurance to or from the entity.
    (III) Offers or assumes to act in the negotiation of this insurance.
    (IV) Aids in transacting the insurance business of an entity by negotiating for or placing risks or delivering policies or collecting premiums for the entity.

31 PA. CODE § 37.1.

[17]
    At the motion hearing, Plaintiff acknowledged that he was not attempting to allege that RTI and Conway were insurers, but that he misused the term "issued" in his pleadings. The Court agrees that his pleadings are inartful, although, he has alleged that "Plaintiff's policy documents listed 'certain underwriters at Lloyds' as the insurer," and he has not argued otherwise. (Docket No. 177 at ¶ 20).

relationship between an insurance broker and client is an arm's length relationship."[18] *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 579 (Pa.Super.Ct. 2006). In the context of an insurance transaction, the insured is presumed to know what type of coverage he/it needs or wants,[19] and an insurance broker is not under an affirmative duty to inspect a property and recommend insurance to a client, *id.*, or to advise a client regarding the extent of coverage, *Stern Family Real Estate P'ship v. Pharmacists Mutual*, Civ. A. No. 06-130, 2007 U.S.Dist.LEXIS 22296, at *10-16, 2007 WL 951603 (W.D.Pa. Mar. 27, 2007). But, an insurance broker may be held liable if he/it affirmatively undertakes such duties and then negligently performs, or if a special relationship is present between the parties.[20] *Stern*, 2007 U.S.Dist.LEXIS 22296, at *19-20. Moreover, "[a] plaintiff acquires a cause of action against his broker ... where the broker neglects to procure insurance, or does not follow instructions" from a client, "or if the policy is void or materially

---

[18]

     *See* n. 14, *supra*. The Court further notes that to the extent that RTI acted as a dual agent in this case, the fact that RTI may have acted as an agent of Underwriters would not change the Court's analysis. Here, Plaintiff claims negligence as a result of the alleged breach of duties owed to him by RTI and is not seeking to hold Underwriters liable under an agency theory, wherein any potential agency between RTI and Underwriters could possibly be relevant. *See Luber v. Underwriters at Lloyd's*, Civ. A. No. 92-2200, 1992 WL 346467, at *3-4 (E.D.Pa. Nov. 16, 1992)(finding that an insurer is not liable for actions of an insurance broker absent some evidence of an agency relationship under Pennsylvania law).

[19]

     As this Court recognized in a prior Memorandum Opinion, *see Allegrino v. Conway*, Civ.A.No. 09-1507, 2010 WL 1687558, at *9 (W.D.Pa. April 26, 2010), Plaintiff is presumed to have read and understood the terms of his insurance policies. *Schoble v. Schoble*, 349 Pa. 408, 37 A.2d 604 (Pa. 1944); *see also Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169, 1174-75 (E.D.Pa. 2000). This is particularly true given Plaintiff's prior status as an attorney licensed to practice law in California. *See* n. 3, § 4.IV., *supra*.

[20]

     In *Stern*, the District Court noted that "general allegations of reliance on an agent's expertise or knowledge regarding insurance coverage are insufficient to establish a special relationship" but that a special relationship may be present if the agent "holds himself or herself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." *Stern*, 2007 WL 951603, at *4 n.10 (internal citations and quotations omitted). Here, there are no allegations that would support a special relationship in this context. Moreover, at the motion hearing, Plaintiff stated to the Court that he contacted RTI after finding its contact information on the Internet and was not aware of Conway until he saw its contact information on his policies. *See Trans. Hr'g 7/29/10* at 51.

defective through the agent's fault." *Laventhol & Horwath v. Dependable Ins. Assoc., Inc.*, 579 A.2d 388, 391 (Pa.Super.Ct. 1990)(quotation omitted). The duty of care owed is to obtain the coverage that a reasonably prudent professional would have obtained under the circumstances, "unless the [insured] is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss." *Northwestern Mut. Life Ins. Co. v. Babayan*, Civ. A. Nos. 03-717, 03-1622, 2004 U.S. Dist. LEXIS 17155, at *59-60, 2004 WL 1902516 (E.D. Pa. Aug. 25, 2004)(quoting *Consol. Sun Ray, Inc. v. Lea*, 401 F.2d 650 (3d Cir. 1968), *cert. denied*, 393 U.S. 1050 (1969)).

Here, Plaintiff alleges that he contacted Byron Pryor at RTI in April 2008 and requested coverage for his business activities of operating an "internet search engine," and "jeans manufacturing" and the business property to be used during those operations in his renewal policy – the policy which went into effect in May of 2008. (Docket No. 177 at ¶ 143, 144). He also requested that "director and officer liability insurance" and general liability and real property insurance be procured prior to renewal. (*Id.* at ¶ 146). Plaintiff claims that Pryor and RTI failed to add these coverages to his policy, despite his requests. (*Id.* at ¶¶ 143-146). Therefore, Plaintiff has sufficiently alleged that RTI undertook a duty to procure coverage for the above types of property and breached that duty by failing to procure the requested coverage in his renewal policy. *See Laventhol*, 579 A.2d at 391.

RTI further argues that Plaintiff has not sufficiently alleged that he was harmed by these failures and suffered any injury as a result. (Docket No. 194). The Court disagrees. Plaintiff avers that he requested coverage for certain business activities from RTI, the requested coverage was not provided or included in the insurance policy he purchased, property that was allegedly used in

furtherance of those business activities was destroyed and given the lack of coverage, his claim was denied or will be denied. (Docket No. 177 at ¶¶ 143-144). Likewise, he maintains that he requested other types of coverage, including for director and officer liability, general liability and real property, which were not provided, that he made insurance claims and that these claims will likely be denied. (*Id*. at ¶¶ 145-146). These allegations are sufficient under Pennsylvania law and *Twombly/Iqbal* to state a plausible claim for negligence against RTI based on the alleged breach of its duty to procure requested insurance coverage prior to the issuance and/or renewal of the insurance policy.

However, the Court does not find that Plaintiff has sufficiently pled facts that RTI owed or breached any other duty to Plaintiff, including supposed duties to recommend appropriate insurance or to properly process his insurance claims.

As noted, an insurance broker, such as RTI, does not have a general duty to recommend insurance and Plaintiff has not alleged any facts which would suggest that it or Pryor gratuitously undertook an obligation to recommend insurance to Plaintiff and then negligently performed. *See Wisniski*, 906 A.2d at 579; *Stern*, 2007 U.S.Dist.LEXIS 22296, at *10-16. Plaintiff's bare allegation that all of the Defendants, including RTI, Conway and Underwriters, conducted an inspection of the property prior to his purchase of insurance from Underwriters, does not, by itself, create any duty owed by RTI to Plaintiff. (Docket No. 177 at ¶ 23). Moreover, Plaintiff makes no allegations that the business property that was destroyed was present in the property when it was inspected or any other fact which would possibly tend to show that the inspection of a three-unit apartment building by these entities somehow triggered a duty to RTI to recommend that he seek out coverage for that property. Indeed, the only allegations that any entity was put on notice of these alleged activities was that Plaintiff requested the coverage from RTI in April of 2008. (*Id*. at ¶¶ 143-146). Thus, based

on the allegations in Plaintiff's Third Amended Complaint, Plaintiff has not pled sufficient facts to demonstrate that such a claim is plausible.

Plaintiff has also not sufficiently alleged that RTI breached a duty to process his insurance claims. The insurer in this case, Underwriters, is obligated under its insurance contract with Plaintiff to act in good faith and adjust Plaintiff's claims, paying any claims lawfully due under the policies. *See Smith v. Lincoln Ben. Life Co.*, Civ. A. No. 08-1324, 2009 WL 789900, at *11 (W.D.Pa. Mar. 23, 2009)(citing *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1144 (Pa.Super.2006)("In Pennsylvania, a duty of good faith and fair dealing is implied in an insurance contract.")), *aff'd*, No. 09-2098, 2010 WL 3730196 (3d Cir. Sep. 24, 2010)(not published). In this case, Underwriters is also under a contractual duty to Plaintiff to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."[21] (Docket No. 177-1 at 12, 42). As his insurance broker, RTI has no such duty.[22] *See Allegrino v. Conway E & S, Inc. et al.*, Civ. A. No. 09-1507, 2010 WL 1854125, at *6 (W.D.Pa. May 5, 2010)(holding that Conway and RTI are not insurers and granting summary judgment in their favor on Plaintiff's breach of contract claims). Based on Plaintiff's allegations (Docket No. 177 at ¶¶ 149-151, 156), it appears that RTI undertook some duty by assisting and/or advising Plaintiff regarding his insurance claims and a duty may be established. However, even if RTI undertook such a duty, Plaintiff's allegations neither establish that any such duty was breached nor that he was harmed by

---

[21]

The Court notes that the terms "Covered Property" and "Covered Causes of Loss" are specifically defined under section A.1 and A.3 of the policies and Covered Causes of Loss is further defined in "Causes of Loss - Basic Form." (Docket No. 177-1 at 12-13, 20-24, 42-43, 50-54).

[22]

Likewise, Conway has no such duty. Indeed, the Certificate attached to the policy expressly provides that Conway is the Correspondent and that "[t]he Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever." (Docket No. 187-1 at 33; 187-2 at 4).

any of RTI's conduct. Plaintiff alleges that every document he has submitted to RTI for the purpose of having his claim processed by Underwriters was likewise provided to Conway and Underwriters. Thus, to the extent that RTI had a duty to provide information to the insurer in this case, Plaintiff's allegations demonstrate that all such information was provided and there was no breach of this duty, nor any harm to him.

Plaintiff's other allegations do not set forth a plausible claim of negligence against RTI. He avers that he requested that RTI mark his claim as "windstorm damage" in August 2008 because he believed at the time that windstorm damage caused his losses. (Docket No. 177 at ¶ 149). His claim was then submitted to the insurer as windstorm damage. (*Id*.). He later requested that his claim be changed to "vandalism" but was told by RTI that his claim was not timely and would likely be denied. (*Id*. at 152, 154). In any event, he submitted the vandalism claim to his insurer, and although it was "classified as late" by the insurer, the claim has yet to be adjusted or denied. (*Id*. at ¶¶ 41, 62, 152, 154). Based on these averments, there are simply no facts that would support the breach of any duty by RTI, an insurance broker, for submitting Liberty's insurance claim in the manner requested by Plaintiff.

### 2. Negligence Claim Against Conway

Plaintiff has also failed to plausibly state a claim for negligence against Conway. Although Conway is an insurance agent, specifically, an agent of Underwriters in the context of the instant transactions, much of the above analysis is equally applicable to Plaintiff's claims against Conway. Moreover, to the extent that Plaintiff argues that he has stated a claim against Conway as a result of the supposed partnership between RTI and Conway, Plaintiff's allegations regarding Conway are mere conclusions that the policies were "jointly sold" to him by both RTI and Conway and that these

entities acted as "partners." *See Allegrino v. Conway E & S, Inc.*, Civ. A. No. 09-1507, 2010 WL 1854125, at *6 (W.D.Pa. May 5, 2010)(holding that similar allegations that RTI and Conway were "partners" with Lloyds did not allege a partnership"). He offers no further facts regarding the supposed relationship between these entities. Instead, these allegations are mere legal conclusions which are not credited by the Court when evaluating Plaintiff's Third Amended Complaint. *See Fowler*, 578 F.3d at 210-11. Therefore, Plaintiff cannot rely on either a "partnership" or "joint actor" theory in order to establish a duty owed to him by one of these entities that is not otherwise present.

Further, Plaintiff's bare allegations against Conway fall woefully short of sufficiently stating a claim of negligence against that entity. Plaintiff alleges only that Conway was one of the entities that conducted the initial inspection; that Charles Conway did not return any of his phone calls in August 2008; and later provided him with some information in November 2009. (Docket No. 177 at ¶¶ 23, 163, 164). Based on Plaintiff's pleadings, it is clear that Conway never undertook any duty to recommend insurance to Plaintiff nor did it negligently process any of his insurance claims–which have been submitted to the insurer. *See Stern*, 2007 WL 951603, at *3 ("insurance agent is not under a general duty to advise the insured as to the type or amount of available coverage, or to obtain total/full coverage, or explain the policy and its coverages and/or exclusions, absent a special relationship."); *Kilmore v. Erie Ins. Co.*, 595 A.2d 623, 626-27 (Pa.Super.Ct. 1991)("we find no justification in the law to impose the additional burden on insurers that they anticipate and then counsel their insured on the hypothetical, collateral consequences of the coverage chosen by the insured."). Thus, Plaintiff's negligence claim against Conway is dismissed, with prejudice.

B.      *Plaintiff's Request for Punitive Damages*

The Court previously dismissed Plaintiff's request for punitive damages against both

Defendants as a result of their alleged negligence, but granted Plaintiff leave to amend his request. *See Allegrino*, 2010 WL 1854125, at *8; (Docket No. 163). Defendants have moved to strike Plaintiff's request for punitive damages on grounds that Plaintiff's allegations offer no more support for punitive damages than was previously set forth in his Amended Complaint. (Docket No. 194). Plaintiff believes that his allegations are sufficient. (Docket No. 209). The Court agrees with Defendants and will strike the request for punitive damages.[23]

First, because the Court has already dismissed Plaintiff's cause of action for negligence against Conway, Conway's motion to strike Plaintiff's request for punitive relief against it is denied, as moot. As to the request for punitive damages against RTI, under Pennsylvania law, punitive damages may be awarded for negligent conduct that is outrageous due to the defendant's evil motives or "reckless indifference to others." *Sabric v. Martin*, Civ. A. No. 09-12237, 2010 U.S. Dist. LEXIS 12502, at *17 (M.D. Pa. Feb. 12, 2010)(citing *Burke v. Maassen*, 904 F.2d 178, 181 (3d Cir. 1990)). In *Sabric*, the plaintiff alleged the defendants' conduct was outrageous based on their conscious disregard of six specific incidents averred by the plaintiff. *Sabric*, 2010 U.S. Dist. LEXIS 12502, at *17. The court found that these "specific allegations" were sufficient to make out a claim for punitive damages. *Id.*

Here, as in his earlier pleading, Plaintiff has simply pled that Defendants were "reckless and careless" in breaching their duty to Plaintiff in arranging for and recommending an appropriate insurance policy. (Docket No. 3 at 21; Docket No. 177 at ¶¶ 165, 166). Similarly, he has now pled in a conclusory fashion that RTI "intentionally misled Plaintiff with an evil intent and motive to

---

[23]

The Court notes that to the extent that Defendants' motion is more properly analyzed under Rule 12(b)(6), *Iqbal* and *Twombly*, the Court also would dismiss Plaintiff's request for punitive damages under that standard.

defeat Plaintiff's Claim and protect their claim rate and standing with Lloyds." (Docket No. 177 at ¶¶ 152, 154). Moreover, the factual allegations proffered in support of his assertions of "reckless and careless" conduct and "evil intent and motive" on RTI's behalf are not sufficient to support a claim for punitive damages. *See Allegrino*, 2010 WL 1854125, at *8 (dismissing Plaintiff's request for punitive damages against RTI). If anything, as discussed above, Plaintiff has alleged mere negligent conduct by RTI, through Pryor's actions. Plaintiff's negligence claim against RTI will survive the present motion to dismiss. However, in the Court's estimation, Plaintiff has not sufficiently pled a claim for punitive damages against RTI pursuant to *Twombly* and *Iqbal*. *See Fowler*, 578 F.3d at 210-11. Therefore, said request for relief is stricken and dismissed, with prejudice.

C.     *RTI's Motion to Strike*

In addition to its motion to dismiss, RTI has moved to strike certain of the paragraphs in Plaintiff's Third Amended Complaint under Rule 12(f). RTI requests that the Court strike paragraphs 143-146 and 157 because Plaintiff erroneously avers in those paragraphs that it "issued" certain types of insurance. (Docket No. 194). RTI also moves to strike paragraphs 141 and 161 on grounds that Plaintiff has failed to adequately allege a partnership between RTI and Conway. (*Id.* at ).

Upon consideration of these paragraphs, the Court does not find that they consist of "redundant, immaterial, impertinent, or scandalous matter[s]." FED.R.CIV.P. 12(f). Moreover, as discussed above, the Court finds that Plaintiff's use of "issued" and like terms in reference to RTI's actions, results from inartful pleading and does not necessitate striking the cited paragraphs. Plaintiff simply does not argue that RTI is an insurer as is suggested by RTI. Further, the Court has found

that Plaintiff's allegations in paragraphs 141 and 161 related to the supposed partnership between RTI and Conway are legal conclusions and did not accept these allegations as true when evaluating Plaintiff's Third Amended Complaint. Accordingly, RTI's motions to strike are denied.

D.    *Leave to Amend*

As indicated, the claims and requests for punitive damages that are dismissed or stricken will be dismissed, with prejudice. Plaintiff is presently on his Third Amended Complaint and he has to this point failed to plead a plausible negligence claim against Conway or a claim for punitive damages against RTI. (*See* Docket Nos. 1, 3, 169, 170, 177). He was also provided with an opportunity to clarify his claims at the motion hearing, but failed to offer any additional factual support for these claims. *See Paschal v. Billy Beru, Inc.*, 373 Fed.Appx. 213 (3d Cir. 2010)(permitting the Court to consider *pro se* plaintiff's testimony to clarify claims in his complaint). Given the state of the pleadings, and the record before this Court,[24] it is clear that any further amendment of Plaintiff's negligence claim against Conway or his punitive damages claim against RTI would be futile. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Thus, Plaintiff's negligence claim against Conway and his request for punitive damages against RTI are dismissed, with prejudice.

## VI.    Conclusion

For the above reasons, Defendants Conway and RTI's Motion to Dismiss and to Strike Plaintiff's Amended Complaint #3 (Docket No. 193) is GRANTED, IN PART and DENIED, IN

---

[24]    Plaintiff has also attempted to interject certain facts by way of an "affidavit" attached to his response to Defendants' motions. (Docket No. 209-1). These new facts include that Plaintiff was told by Pryor that RTI and Conway were partners in the insurance business. These additional conclusory allegations would not undermine the Court's earlier holding that based on Plaintiff's allegations, RTI and Conway are not partners in the context of this case, nor that Plaintiff has failed to plausibly state a claim of negligence against Conway.

PART.  Conway's Motion to Dismiss the sole claim against it, negligence, is granted and said claim, including the request for punitive damages is dismissed, with prejudice.  Therefore, as no claims remain against Conway, it is dismissed from this action, with prejudice.  RTI's Motion to Dismiss the negligence claim against it is denied, but its Motion to Strike the punitive damages claim is granted, and the punitive damages request is dismissed, with prejudice.  RTI's Motion to Strike paragraphs 143-146 and 157 because RTI is not an insurer and paragraphs 141 and 162 for failing to allege a partnership relationship between Conway and RTI is denied.   An appropriate Order follows.

_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Date:   October 6, 2010.

cc/ecf:  All counsel of record.
      Anthony Allegrino, II, *pro se*